THE STEAK HOUSE and Farmers Insurance Group *v.*
Misty L. WEIGEL

CA 07-34                                                270 S.W.3d 365

Court of Appeals of Arkansas
Opinion delivered December 19, 2007

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Sarah Presson* and *John O. Payne*, for appellants.

*Frederick S. Spencer*, for appellee.

D.P. MARSHALL JR., Judge. While working at The Steak House, Misty Weigel allegedly sustained a left-knee injury. The Steak House contested her claim, arguing that it had no notice of the injury and that no objective proof showed a compensable knee injury. The administrative law judge rejected The Steak House's arguments and awarded Weigel benefits. The Commission affirmed and adopted the ALJ's findings. On appeal, The Steak House argues that the Commission committed errors in admitting evidence and determining witnesses' credibility at the hearing. The Steak House also argues that substantial evidence does not support the Commission's finding of a compensable knee injury. The Steak House's first two arguments lack merit. The Commission does need to make an additional finding, however, about whether Weigel's "guarding" constituted objective medical evidence. We therefore reverse and remand for additional findings on compensability.

## I.

About a week after she began working at The Steak House, Weigel alleged that she felt her knee "crack" when she turned to reach for a spray bottle to wipe off tables at the restaurant. She claimed that she felt an instant throbbing sensation. Weigel also said that she reported the incident to the restaurant's owner, Jay Winham, the same day, and discussed the injury with him several more times during the next two weeks. Valerie Ross, Weigel's friend and co-worker at The Steak House, testified that she observed the injury and saw Weigel report the injury to Winham.

Weigel went to the emergency room at Baxter Regional Medical Center about ten days after her injury. She received crutches and a knee immobilizer, and was told to follow up with her family doctor. Weigel was eventually referred to Dr. Anthony McBride, an orthopedic surgeon. Dr. McBride's notes indicate that: "McMurray's testing is impossible secondary to guarding but it [is] apparently more intense on the medial side than the lateral side. Lachman's is negative but once again, she is guarding." Dr.

McBride recommended an MRI of Weigel's left knee. This test, however, was not done at that time.

Jay Winham, The Steak House's owner, testified that Weigel never told him that she injured herself at work until she filed her claim for workers' compensation benefits in June 2005. The Steak House denied Weigel's claim based on lack of notice and no objective proof of a knee injury. The ALJ conducted a two-part hearing in this matter. After the initial hearing, the ALJ left the record open to allow testimony from Mr. Winham, who was unable to attend the first hearing. Between the two hearing dates, Weigel underwent an MRI of her knee. Weigel gave notice before the second hearing that she wanted to introduce this MRI report. The ALJ admitted the belated report, over The Steak House's objection, because Weigel "had no financial means to obtain [the MRI] herself until she was approved for SSI and Medicaid after the first hearing held on February 1, 2006."

In his opinion, the ALJ found that Weigel suffered a compensable left-knee injury and that she promptly notified Winham of the injury. The Commission adopted the ALJ's opinion in its entirety.

## II.

The Steak House argues that the Commission based its compensability finding on erroneous evidentiary rulings. We disagree.

The decision to admit the belated MRI report was entirely within the ALJ's discretion, and he did not abuse that discretion. Ark. Code Ann. § 11-9-705(c)(3) (Supp. 2007). Weigel had a good reason for waiting until after the first hearing to undergo an MRI — she could not afford it until then. The Commission should be liberal, rather than stringent, about the admission of evidence. *Bryant v. Staffmark, Inc.*, 76 Ark. App. 64, 69, 61 S.W.3d 856, 860 (2001). And we see no abuse of discretion in the admission of this report before the second hearing. *Brown v. Alabama Elec. Co.*, 60 Ark. App. 138, 144, 959 S.W.2d 753, 756 (1998).

The Steak House also argues that the Commission erred by allowing Weigel to cross-examine Winham about other instances where Winham denied receiving notice about an alleged work injury. Evidence of similar occurrences is generally admis-

sible only when the proposing party demonstrates that the other events arose out of the same or substantially similar circumstances. Ark. R. Evid. 401; *Fraser v. Harp's Food Stores, Inc.*, 290 Ark. 186, 188, 718 S.W.2d 92, 93 (1986). The Commission, however, is not bound by the Rules of Evidence. Instead, the Commission must adhere to basic rules of fair play, such as recognizing the right of cross-examination and the necessity of having all evidence in the record. *Brewer v. Tyson Foods, Inc.*, 10 Ark. App. 88, 90, 661 S.W.2d 423, 424 (1983).

The ALJ analyzed this issue correctly. He ruled that:

> Mr. Spencer's questions appeared to have been designed to uncover possible instances of Mr. Winham asserting an alleged lack of notice to Mr. Winham under substantially similar circumstances to the circumstances presented in this case (i.e., employees of Mr. Winham allegedly notifying Mr. Winham of work-related injuries and Mr. Winham asserting that he never received notice from the injured employees during the time frame alleged by the employees).

We see no abuse of the Commission's broad discretion in evidentiary matters. *Brown, supra.*

## III.

The Steak House next argues that the ALJ erred in determining the credibility of witnesses at the hearing. The Steak House claims that its witness, Mr. Winham, was more credible than Weigel and Ross about all matters, including the conflicting testimony about notice. Based on his assessment of the parties' credibility, the ALJ found that Weigel gave Winham prompt notice about her injury. The Commission adopted that finding. Because the determination of the credibility and weight to be given to a witness's testimony is solely for the Commission, The Steak House's argument on this point is without merit. *Williams v. Brown's Sheet Metal/CNA Ins. Co.*, 81 Ark. App. 459, 462, 105 S.W.3d 382, 384 (2003).

## IV.

The Steak House next argues that substantial evidence does not support the Commission's finding that Weigel sustained a compensable injury. To get benefits, Weigel had to prove the

following: (1) that she suffered an injury arising out of and in the course of her employment with The Steak House; (2) that the injury was caused by a specific incident identifiable by time and place of occurrence; (3) that the injury caused internal or external physical harm to her body, which required medical services or resulted in disability or death; and (4) that the injury was established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(A)(i) & (4)(D) (Supp. 2007).

The Steak House claims that Weigel failed to meet the statute's objective-findings requirement. The Commission based its compensability decision on the "guarding" noted by Dr. McBride in a March 2005 medical record. The Commission concluded that guarding "is an objective finding within Act 796 of 1993." In reaching this conclusion, the Commission relied on a medical-dictionary definition equating guarding with muscle spasms, and on several prior Commission opinions, all of which concluded that guarding is an objective finding. This court, however, has stated in *dicta* that muscle guarding is "subjective criteria and not objective findings." *Polk County v. Jones*, 74 Ark. App. 159, 161, 47 S.W.3d 904, 905 (2001). Because the Commission decided the compensability of Weigel's injury on "guarding" alone, whether guarding is a subjective or an objective finding is the dispositive issue.

█ We hold that muscle guarding is sometimes involuntary and sometimes voluntary. Many of the medical authorities we have examined indicate that guarding is often an involuntary response,[1] and thus would be an objective finding that would satisfy the statute. But some medical authorities indicate that

---

[1] STEDMAN'S MEDICAL DICTIONARY 750 (26th ed. 1995) (defining "guarding" as a spasm of muscles to minimize motion or agitation of sites affected by injury or disease); WILLIAM E. PRENTICE AND MICHAEL L. VOIGHT, TECHNIQUES IN MUSCULOSKELETAL REHABILITATION 311 (Ed. 2001) (describing muscle guarding as a protective response in muscle that occurs due to pain or fear of movement); FLORENCE PETERSON KENDALL ET AL., MUSCLES: TESTING AND FUNCTION WITH POSTURE AND PAIN 52 (5th ed. 2005) (Nature's way of providing protection for a muscle injury is by "protective muscle spasm" or "muscle guarding" in which the muscles become rigid to prevent painful movements); MELLONI'S ILLUSTRATED MEDICAL DICTIONARY 257 (4th ed. 2002) (defining "guarding" as a spasm of muscles at the site of injury or disease occurring as the body's protection against further injury).

guarding can be a voluntary response to pain,[2] and thus would be a subjective finding. Some other jurisdictions have acknowledged medical opinions stating that guarding can be a voluntary act. *E.g.*, *DeLuca v. Brown*, 6 Vet. App. 321, 323 (1993) ("The [doctor's] impression was: '. . . that the restricted mobility found was in part due to voluntary guarding.'").

We hold that the Commission's conclusion in this case — that "guarding is an objective finding" — sweeps too broadly. Our contrary *dicta* in *Polk County* that guarding is subjective does too, and we disavow it. Guarding can be beyond the patient's control or within the patient's control. This issue is therefore a matter of fact on which the Commission should make a specific finding case by case based on the medical evidence. The Commission's opinion here lacks a finding about whether Dr. McBride concluded that Weigel's guarding was voluntary or involuntary. We do not know whether the guarding notation was a subjective or an objective finding. This fact question is for the Commission, not our court.

We therefore reverse and remand for the Commission to make additional findings of fact about Weigel's guarding. We also note that, though the Commission did not rely on the belated MRI report in determining compensability, it should consider that report on remand because we have held that the ALJ properly admitted this evidence.

Reversed and remanded.

PITTMAN, C.J., agrees.

GRIFFEN, J., concurs.

---

[2] BERNARD M. ABRAMS, M.D., PHYSICAL EXAMINATION OF THE PAIN PATIENT, 11 JOURNAL OF BACK AND MUSCULOSKELETAL REHABILITATION 183-99 (Dec. 1998) ("A finding of spasm of the paraspinal muscles can occasionally be found in volitional muscle guarding rather than involuntary reflex guarding."); MICHAEL E. GEISSER, PHD, SURFACE ELECTROMYOGRAPHY AND LOW BACK PAIN, 35 BIOFEEDBACK 15 (Spring 2007) (discussing other authors' suggestions that guarding is a volitional response).