SLIP OPINION

Cite as 2015 Ark. App. 271

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-16

| | |
|---|---|
| | **OPINION DELIVERED** APRIL 29, 2015 |
| MELISSA COGBURN | |
| APPELLANT | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. JV-13-126] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | HONORABLE ROBERT E. McCALLUM, JUDGE |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Melissa Cogburn, the mother of six children adjudicated dependent-neglected, appeals the Clark County Circuit Court's permanency-planning order, filed October 8, 2014, and amended October 27, 2014. The order sets the goal of the case as permanent custody of two children, J.C. (DOB 09/02/2004) and R.C. (DOB 08/13/2003), with their father, Jack Cogburn. The goal of the case for the remaining four children continued to be reunification with their mother. The sole issue on appeal is whether the evidence was sufficient to support the trial court's order. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect against the mother on October 30, 2013, alleging that the children were dependent-neglected as a result of Melissa Cogburn being charged with DWI, having wrecked her vehicle with three of her children in it, and citing in an attached affidavit its long history with Ms. Cogburn involving allegations of environmental neglect, inadequate

food, and inadequate supervision. The petition alleged that it was necessary to remove the children from parental care to protect their health, safety, and physical well-being. The petition also stated that Jack Cogburn was the father of the two oldest children, J.C. and R.C. The attached police report reflected that Melissa Cogburn was charged with DWI-drugs; endangering the welfare of a minor; having no liability insurance; careless driving; and violating the child-restraint law. An ex parte order placing the children in DHS custody was granted and filed on October 30, 2013. On November 6, 2013, Jack Cogburn filed a motion for temporary custody of J.C. and R.C.

On November 8, 2013, an order was filed finding probable cause that the emergency conditions that had necessitated removal of the children from their mother continued; the children should continue in the custody of DHS; and it was contrary to their welfare to be returned to their mother. DHS was ordered to develop a case plan and Ms. Cogburn was ordered to submit to a hair-follicle test for drugs and alcohol and to submit to a drug-and-alcohol assessment.

A consent order for temporary custody of J.C. and R.C. was filed on November 8, 2013, providing that their father was allowed temporary custody during the pendency of the case. An adjudication order was filed February 10, 2014, finding that Melissa Cogburn had stipulated to the facts contained within the affidavit attached to the emergency petition. Thus, the trial court found that the children were dependent-neglected based on their mother's drug use. The goal of the case was set forth as reunification with Ms. Cogburn. The trial court also adjudicated Jack Cogburn as the legal father of J.C. and R.C. and

SLIP OPINION

acknowledged the custody order filed November 8, 2013.

A court report was filed by DHS on March 19, 2014, wherein it was the agency's recommendation to continue the children in foster care. On April 7, 2014, Jack Cogburn filed a motion seeking permanent custody of J.C. and R.C. Melissa Cogburn responded that she was working with DHS to remedy the reasons for the removal of her children and was in compliance with the court orders.

On April 15, 2014, a review order was filed finding that a return to Ms. Cogburn's custody was contrary to the children's welfare. The trial court found that J.C. and R.C. should remain in their father's custody and that the remaining four children should remain in DHS custody. The goal of the case continued to be reunification, and it was found that DHS had made reasonable efforts to provide services to achieve the goal of reunification. The order reflects that Ms. Cogburn substantially complied with the case plan in that she completed her psychological evaluation, attended counseling, attended outpatient drug treatment, and maintained visitation with the children. The trial court noted, however, that Ms. Cogburn was living in a duplex, owned by her relative, with James Ross, a convicted murderer, living in the other portion of the duplex. Finding this arrangement inappropriate housing, the trial court found that Ms. Cogburn's housing was not stable.

A review order of July 17, 2014, maintained custody with DHS and Jack Cogburn and found that the goal should continue to be reunification. The order contains findings that Ms. Cogburn had complied with the case plan in that she had completed her psychological evaluation, attended counseling, completed outpatient drug treatment, obtained housing, and

had visitation with the children, and Jack Cogburn had complied with the case plan. However, the trial court found that it needed to "see more information from Melissa Cogburn to determine her financial ability to care for the juveniles."

At the permanency-planning hearing, DHS and the attorney ad litem recommended that the children be returned to their mother's custody. Jack Cogburn testified that he had custody the previous ten months, and he said that his children had improved in behavior since coming into his care. He testified that he worked Monday through Thursday on a job that required him to be out of town. Therefore, his fiancée Yolanda Whitney took care of the children while he was away. He said that he and Ms. Whitney lived in a six-bedroom house on two acres within the Glenwood city limits. He admitted to drinking a six-pack of beer on Fridays, but said this always took place at his uncle's house, away from the children.

Ms. Whitney testified that she had custody of two children from a previous marriage, and they lived with her, along with Jack Cogburn, Pete Cogburn (Jack's brother), and his girlfriend Courtney Cloneger. She testified that she would be the primary care giver when their father was out of town, but the children had been getting along fine and were thriving. She said that when the children first came into their care, they both had lice and R.C. had an ear infection that took two rounds of antibiotics to cure. She said that both children loved to see their siblings.

DHS caseworker Bobbi Lee testified that she had prepared the court report and recommended that the children be returned to their mother. She said that Melissa Cogburn had support from her mother and received child support and a disability check, so she would

financially be able to handle six children. She said that she had worked with Melissa Cogburn since the beginning of the case, and she had completed the case plan, done everything DHS asked of her, and that reunification was the goal of the case. Ms. Lee admitted that she never "had a question" about J.C. and R.C. being with their father during the pendency of the case. She also said that there was nothing about the children being with the father that would give her concern about their health, welfare, or safety, and the placement there was in the children's best interest. Ms. Lee also stated that she had been aware of Jack Cogburn's out-of-town job when the children were placed with him. She said that Ms. Cogburn had visitation for only the last six weeks.

Melissa Cogburn testified that she felt like she could handle six children and had concerns about Jack Cogburn having custody of J.C. and R.C. She believed because of his work schedule, the children should be with her. She claimed that Mr. Cogburn was in violation of the divorce decree, which stated that he could not live with someone of the opposite sex. She further testified that Mr. Cogburn has had a drinking problem since she had known him, and that he gets violent when he drinks. She claimed that he was very abusive and went to jail one time for it. She also said that she had not received all of her visitation with J.C. and R.C. and that, when she had custody of the children, Mr. Cogburn did not exercise his standard visitation. She said that she had been receiving his child-support payment, even though he had custody of the children, because he was so far behind.

Melissa Cogburn said that, prior to this incident, she was able to take care of the children financially even without Jack Cogburn's child-support payment. She said that if she

had a financial problem, she could call her mother or sister, who were able to help. She stated that if she gets all the children back with her, she might be able to receive $900 in food stamps. Her rent was $500 per month, but she did not know what her utilities would be because she had just moved into her house and had not received a water bill; however, she believed that she would have enough money coming in with the child support, food stamps, and disability check to pay for all of that, even if her parents decided not to help her. She said that she planned to take steps to seek child support against the fathers of the four children who were not at issue in the case.

Karrie Goodman, executive director for CASA in Clark County, said that she had been to every visitation at Melissa Cogburn's house with J.C. and R.C. She said that she had come to realize that the children work together as a family and that she thought it would do more harm to separate the siblings. She said R.C. flourished in being a mom to two younger girls, and that the kids love and are attached to R.C. and J.C. She testified that it was in the children's best interest to keep all six siblings together by reunification with their mother.

In its permanency-planning order of October 8, 2014, the trial court changed the goal of the case for J.C. and R.C. to be permanent custody with their father, and left the goal of reunification with their mother for the other four children. The trial court reasoned that the children had been with their father for eleven months, that Mr. Cogburn had complied with the court's orders, that the children were having problems when they arrived at their father's, but their situation was improving. Further, the court found that Melissa Cogburn had achieved stability for only a short time and only after several delays caused by her poor

judgment. The court noted that her financial situation was precarious and dependent on the maternal grandmother. Further, the court acknowledged that eleven months had passed and determined that changing custody would require a change of schools, daily routine, and possibly medical and counseling personnel, all of which could be detrimental. The trial court found that either party could file an appropriate motion for modification in their divorce action. This order was amended on October 27, 2014.[1] Appellant filed a timely notice of appeal, and this appeal followed.

In dependency-neglect proceedings, the standard of review on appeal is de novo, although we do not reverse unless the trial court's findings are clearly erroneous. *See Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *See id.*

We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Mosher v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 111, ___ S.W.3d ___. This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest

---

[1] Attached to the first amended permanency-planning order is a Rule 54(b) certificate signed by the circuit court, wherein the court found that a danger of hardship or injustice could occur without an immediate appeal. Ark. R. Civ. P. 54(b)(1) (2015). Therefore, in accordance with Arkansas Supreme Court Rule 6-9(a)(1)(B) (2015), the permanency-planning order is an appealable order. *See Ark. Dep't of Human Servs. v. Denmon*, 2009 Ark. 485, 346 S.W.3d 283.

SLIP OPINION

of the children. *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, 446 S.W.3d 210.

Melissa Cogburn argues in this appeal that the evidence presented supported either placing custody with her or a continuation of reunification with her, that there was insufficient evidence upon which to grant permanent custody of J.C. and R.C. to Jack Cogburn, and that the trial court acted against the children's best interest when placing permanent custody with Jack Cogburn. She contends that the decision to award custody to Jack Cogburn was contrary to the recommendations of DHS, the attorney ad litem, and CASA, and it was contrary to the law and facts.

Melissa Cogburn acknowledges that placement with a fit parent is an appropriate permanency plan under Arkansas Code Annotated section 9–27–338(c)(1) (Supp. 2013). She maintains that the overarching concern in any child custody case, however, is the best interests of the child, citing *Arkansas Department of Health & Human Services v. Jones*, 97 Ark. App. 267, 248 S.W.3d 507 (2007). She argues that DHS, CASA, and the attorney ad litem all recommended that the children begin the transition to their mother on the day of the hearing. She contends that only Jack Cogburn and the trial court thought differently.

She claims that the trial court casually dismissed the fact that she had completed her case plan, which flies in the face of allowing reunification with her. She contends that because she is disabled, she can stay home and care for the children. Conversely, Jack Cogburn works out of town and allows his fiancée to care for the children while he is away.

Melissa Cogburn also claims that—even though the trial court found that she had achieved stability for only a short time due to her leaving treatment programs and residing

in a residence with a convicted murderer, that her economic condition is dependent on her mother, and that she has a history of unstable men outside of marriage—she did complete the case plan and achieved stability within ten months of her children being taken into care. DHS recommended that the children be returned to her. She contends that it would be a dangerous precedent to reward the parent who is healthy and able to work, while denying a fit and capable parent custody due to her unfortunate medical condition that limits her income. She claims that finding her incapable of providing financially for her children when the evidence was that she had food stamps, her mother's help, her sister's help, her disability income, and child support is against the weight of the evidence.

She argues that the bond between all six children is close and should not be broken. Further, she claims that it is inconsistent to find that the four younger children would transition into her home, but the older two would not because she was not stable enough.

Ms. Cogburn's appeal to this court is a request to re-weigh the evidence in the trial court's determination of the children's best interest. A de novo review of the record reveals substantial evidence supporting the trial court's findings. We give due deference to the superior position of the trial court to view and judge the credibility of witnesses, *Mosher*, *supra*, and a greater deference in cases involving child custody. *Callison*, *supra*. Given these considerations, the trial court's ruling was not clearly erroneous.

Finally, Melissa Cogburn contends that the trial court's reliance on hearsay evidence was error. The trial court's opinion states as follows:

> At the beginning for this case, J.C. and R.C., and essentially all of the children were being neglected and not receiving proper care and supervision. This

SLIP OPINION

contributed to serious academic and developmental problems for the children. The April 4, 2014 report from J.C. and R.C.'s counselor confirms the serious problems they were having at the time custody was placed with the Father. The counselor also reports that the Father and Yolanda Whitney have appropriately taken the children to counseling and that the children's situation is improving. There was similar evidence from J.C. and R.C.'s school that documented their deficits at the beginning of the case but show academic improvements since the children were placed with the Father.

Ms. Cogburn argues that the counselor did not testify at the hearing and the letter was not introduced, but was merely an exhibit to the father's custody motion. She also complains that the counselor's letter was written four months prior to the hearing. She contends that Arkansas Rule of Evidence 801 (2014) prevents out-of-court statements made by a non-party for the truth of the matter asserted. She claims that the trial court relied on hearsay in finding that the children were being taken to counseling and that their situation was improving. She argues that this error was not harmless, as there was no further information provided in the record to support the trial court's finding that the children's condition had improved. She claims that she was not allowed to object to the letter because it was never offered as evidence, either at the permanency-planning hearing or at a prior hearing.

Although we agree that the trial court erred when it relied on the counselor's report because it was hearsay, *Olivares v. Arkansas Department of Human Services*, 2013 Ark. App. 94, we will not reverse without a showing of prejudice, as prejudice is not presumed. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149. Contrary to Ms. Cogburn's argument that there was no evidence other than the counselor's letter that the children had improved, Jack Cogburn testified that he had custody the previous ten months, and he said that his children had improved in behavior since coming into his care. Yolanda Whitney testified that the

children had improved in that when the children first came into their care, they both had lice and R.C. had an ear infection that took two rounds of antibiotics to cure. Because there was evidence that the children had improved while in the care of their father, any error committed by the trial court in referencing the counselor's letter was harmless.

Affirmed.

ABRAMSON and HARRISON, JJ., agree.

*Dusti Standridge*, for appellant.

No response.