
Cite as 2017 Ark. App. 307

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-16-982

| | | |
|---|---|---|
| CITY OF EL DORADO | | **Opinion Delivered:** May 10, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE ARKANSAS |
| V. | | WORKERS' COMPENSATION |
| | | COMMISSION |
| RICKEY L. SMITH | | [NO. G409661 |
| | APPELLEE | |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the Arkansas Workers' Compensation Commission's August 31, 2016 opinion affirming and adopting the February 9, 2016 opinion of the administrative law judge (ALJ) in which it found that appellee (1) proved that all the medical treatment of record relating to his compensable back injury was reasonably necessary in connection with the injury received by appellee on December 2, 2014; (2) proved his entitlement to future medical treatment for his back; and (3) remained within his healing period and totally incapacitated to earn wages due to his compensable back injury, so as to entitle him to temporary-total-disability-compensation from December 3, 2014, to a date yet to be determined.[1] On appeal, appellant argues that (1) there are no new objective findings to support the ALJ's opinion that appellee sustained a compensable injury; (2) the finding that appellee remained in the healing period after January 22, 2015, is erroneous; and (3) the

---

[1]The ALJ also found that appellee was entitled to the maximum statutory attorney's fee based on the benefits awarded therein; appellant does not appeal this finding.

award of medical benefits in the form of surgery is not supported by any medical evidence. We affirm.

Appellee, a fifty-seven-year-old man, worked for appellant for eighteen years. Having had a history of back pain and having "failed 6 Months or [sic] conservative care -, including physical therapy[,]" appellee underwent orthopedic surgery by Dr. Richard Peek, an orthopedic specialist, on October 15, 2014.[2] His discharge summary states that "[h]e [was] doing well. He ha[d] been walking." His musculoskeletal was "[n]ormal range of motion, [n]ormal strength." He was diagnosed with lumbar spinal stenosis. His symptoms prior to the surgery had been "severe" and "worsening" pain in his "lower back and right lower leg." He had also been having spasms, which were described as "moderate." He was discharged on October 16, 2014, with a follow-up appointment scheduled for November 14, 2014. Dr. Peek's report from the November 14, 2014 visit states that while appellee had a history of moderate spinal stenosis, the problem had "improved[,]" the frequency was "occasional[,]" and appellee described the pain as "dull." The tests showed the "fusion in appropriate position with appropriate progress. No metastic or blastic lesions are seen. No new fractures are present[.]" In a letter dated November 18, 2014, Dr. Peek released appellee to return to "regular work" on December 1, 2014. Appellee returned to work on December 1, 2014, and worked without issue.

---

[2]The specific procedure was a "posterolateral fusion L5–S1 with a cancellous allograft and local bone, and right laminatorry [sic] and decompressive foraminotomy L5–S1 with decompression L5 nerve." Appellee was treated for "spondylolisthesis and spinal stenosis L5–S1."

On December 2, 2014, appellee was getting out of a company vehicle when he slipped and landed on his left side after stepping on a "loose" foot peg.[3] He complained of back pain, but waited to determine if the pain would subside. He visited Dr. Greg Smart on that same date complaining of "pain of the lower back, some pain radiating into the left leg and some pain radiating into the right leg." Dr. Smart's report on his physical evaluation of appellee stated that "[t]he back reveals a restricted range of motion, forward bending only 30 degrees, lateral bending 10 degrees bilaterally, posterior flexion uncomfortable, and he complains of significant pain. He walks in a slightly stooped over position with complaints of discomfort of the lower lumbar region." Dr. Smart assessed appellant with back pain and bilateral leg pain and temporarily placed appellee on "light-duty."[4]

In his report from December 8, 2014, Dr. Smart stated the following:

> [Appellant] is seen in clinic today for followup. He fell last week. He stood up on a foot peg battery box, slipped and knocked him down. He fell off the truck and has suffered low back pain. Initially had rather severe left leg pain. The right leg was less severe. Today's symptoms mainly involve the lower back, probably more right sided than left sided, some burning sensation into the right leg. He states that the symptoms are very similar to what he had prior to surgery 10/15/14 per Dr. Peek.

Stating that appellee had "persistent symptoms" that had kept him from work the last six days and noting that appellant was "certainly not able to tolerate regular duties and [was] at risk of performing any work type activity at this point due to the severity of the pain[,]" Dr. Smart ordered that appellant remain off work until released by Dr. Peek.

---

[3]The medical records also state that appellee fell on his back.

[4]Appellee's limitations included "no climbing, no driving, no lifting greater than 10 lbs."

SLIP OPINION

Appellee was seen by Dr. Brent Sprinkle on January 2, 2015, reporting burning and throbbing with radiation to the leg on the right side. The duration of symptoms was reported as three to four weeks. While stating that there was "no erythema, edema, or deformity" in the lumbar spine and that muscle strength is within normal limits, Dr. Sprinkle also stated that "[t]here are Trigger Points palpated in the following muscles: Lumbar Paraspinals Bilaterally." He also stated

> This patient has a clear history of chronic low back and leg pain, for which he underwent bilateral L5-S1 foraminotomy and lumbar fusion on October 15 of this year, it is somewhat surprising he was able to return to work so soon after fusion surgery. His work injury is most likely just a [sic] aggravation of a pre-existing problem. I do think the meralgia paresthetica is likely related to his work injury and not necessarily a pre-existing condition[.]

He gave appellee an injection in his lateral femoral cutaneous nerve. He diagnosed appellee with meralgia paresthetica.[5] Appellee was returned to work with

> No lifting greater that 20 pounds. No frequent bending or twisting, no greater than 10 times per shift[.] Work status is more related to his pre-existing spondylolisthesis and surgery, the patient was on work restrictions from Dr. Peek at the time of injury, there are no new work restrictions as a result of his work injury, so future work status I would defer to Dr. Peek.

Appellee was seen by Dr. Sprinkle on January 22, 2015, reporting back and leg pain.[6] Noting that the injection that he gave appellee at his last visit was "unhelpful" and advising that he "would not repeat" the injection, Dr. Sprinkle stated that there was a lack of need for follow-up care with him due to "[a]ny further care really more [sic] related to [appellee's] pre-existent spondylolisthesis and surgery" and that follow-up would be with Dr. Peek. Dr.

---

[5]Dr. Smart also diagnosed appellee with degenerative lumbar intervert disc, lumbosacral spondylosis, myositis, and congenital spondylolysis lumbosacral.

[6]Appellee rated his back pain as "7–8" out of ten.

Sprinkle released appellee to return to work without restriction as of that date, giving him a "combined 4% whole person impairment rating for the Meralgia paresthetica." He gave no impairment rating for the lumbar spine as he thought "the MRI is consistent with pre-existing phenomena."

Dr. Peek's report from his January 22, 2015 visit with appellee stated that appellee's pain "problem [was] severe" and had "worsened" and the "frequency of pain was persistent." The pain was located in the bilateral lumbar area, right thigh and right leg and was described by appellee as "sharp and stabbing." Though Dr. Peek stated that appellee's "AP and lateral of the spine reveals fusion in appropriate position with appropriate progress[,]" that "[n]o metastatic or blastic lesions [were] seen[,]" and that "[n]o new fractures [were] present[,]" he also found that appellee's paraspinous tone was diminished and he experienced moderate spasms. He excused appellee from work for one month.[7]

An MRI of the claimant's lumbar spine was performed with and without contrast on that same date. Dr. Michael Kendrick rendered the following impression:

> Multilevel degenerative change is associated with postoperative change at L5–S1. At L5–S1 there is no finding of recurrent disc herniation. Degenerative findings at L5–S1 contribute to moderate to severe bilateral foraminal stenoses [sic].

Also on that same date, the claimant underwent an EMG Study, with the following results:

> Summary/Interpretation:
> No electrodiagnostic evidence of a lumbar radiculopathy, peripheral neuropathy, or focal tibial or peroneal nerve entrapment is seen in the extremity tested today.
> Lateral femoral cutaneous nerve conductions were attempted but not obtainable, this can be a technically difficult nerve to study, its absent response is supportive but does

---

[7]Appellee continued his follow-up treatment with Dr. Peek, who excused appellee from work duty for three months on April 20, 2015, and gave him a trigger-point injection on July 24, 2015, and October 27, 2015.

not absolutely confirm meralgia paresthetica as an explanation for the lateral thigh sensory complaints.

Appellee continued follow-up treatment with Dr. Peek. His February 19, 2015 report stated that appellee's pain problem was "severe" and "[had] not changed." He excused appellee from work duty for three months on April 20, 2015. His July 24, 2015 report stated that appellee's problem was "severe" and "[had] worsened." Appellee received trigger-point injections on all three dates as well as on October 27, 2015.

Appellant initially stipulated that appellee's injury was a compensable back injury, accepting December 2, 2014, as the date of appellee's injury, and identifying additional benefits, permanent-partial disability once a rating had been given, and attorney's fees as the only issues for the hearing.[8] However, appellant withdrew the stipulation and controverted the claim in its entirety on January 10, 2016, stating that it had accepted and paid Dr. Sprinkle's 4% rating and that it had "gratuitously" paid for appellee's treatment with Dr. Peek for appellee's unrelated pre-existing back problems. It sought "a credit for any and all benefits paid herein." The issues to be litigated were the compensability of appellee's claim; whether he was entitled to additional medical benefits; and whether he was entitled to temporary-total–disability benefits from December 3, 2014, to a date yet to be determined.

A hearing before the ALJ was held on February 9, 2016. Appellee was the only witness and pertinent testimony not duplicative of information already contained herein was as follows. He had been appellant's employee as a truck driver, which included duties of "[going] back and forth to Little Rock picking up materials and stuff, [doing] road work,

---

[8]This was noted in the November 17, 2015 prehearing order.

[digging] up ditches, [mowing] ditches and [hauling] off materials to dumping places." He had been released to go back to work on December 1, 2014, which he did, and he "felt good when [he] went back" on that date; the day "went well." He was working a job tearing down condemned houses and hauling them to the dump when he stepped out of his truck, fell, and hit his back on the battery box. He was told by the doctor that he was on light duty, but the job "[did] not have light duty[,]" so he was told to "take off work or have vacation or something like that." Dr. Peek had not yet released appellee to return to work and had told him he would need surgery again.

Appellee testified that his injury "is in the same area that [he] had problems with when Dr. Peek treated [him] in 2014." His doctor's examinations prior to his surgery "said [his] lower extremity muscle tone [was] normal, but the muscle tone in [his] back [was] diminished on the paraspinals and [he] had spasm." But he was "feeling better" after his surgery, though he was "having weakness and numbness in [his] right thigh, and the pain was radiating to the right back and to the right thigh" on November 14, 2014. He has been put on oxycodone since the December 2, 2014 injury, which Drs. Sprinkle and Peek noted was a new medication. Appellee stated

> I was pain free or reduced pain between the time Dr. Peek released me after my surgery and the day I went back to work. I was pain free with no restrictions. I went back to work and got hurt the second day. Since that time, I haven't been pain free at any point.

He was "not doing well today" as he was "hurting all the time now" and "[did not] know of any jobs that [he could] physically do as a truck driver" for appellant.

The ALJ filed her opinion of February 9, 2016, finding the following:

4.      The claimant proved by a preponderance of the evidence that he sustained a compensable back injury on December 2, 2014.

5.      The claimant proved by a preponderance of the evidence that all the medical treatment of record relating to to [sic] his compensable back injury was reasonably necessary in connection with the injury received by the claimant on December 2, 2014. The claimant also proved his entitlement to future medical treatment for his back, including the surgery recommended by Dr. Peek.

6.      The claimant has remained within his healing period and totally incapacitated to earn wages due to his compensable back injury, so as to entitle him to temporary total disability compensation from December 3, 2014 to a date yet to be determined.

The opinion specifically stated,

Although the claimant suffered pre-existing back problems, for which he underwent surgery, the law is well-established in workers' compensation law, as pronounced by the Arkansas Court of Appeals in *Williams v. L & M Janitorial, Inc.*, 85 Ark. App. l, 145 S.W. 3d 383 (2004), that an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable.

Accordingly, the ALJ awarded appellee temporary total disability compensation from December 3, 2014, to a date yet to be determined and all reasonable and necessary medicals awarded herein, to include the recommended back surgery by Dr. Peek, resulting from the claimant's accidental work-related injury of December 2, 2014. Appellant appealed to the Full Commission, which affirmed and adopted the ALJ's opinion. This timely appeal followed.

Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion.[9] In so doing, the Commission makes the ALJ's findings and conclusions the findings and

_____

[9]*Godwin v. Garland Cty. Landfill*, 2016 Ark. App. 498, at 4, 504 S.W.3d 660, 662 (citing *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421).

conclusions of the Commission.[10] Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion.[11]

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.[12] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[13] The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission.[14]

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission.[15] Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible.[16] When there are contradictions in the evidence, it is within the

---

[10]*Id.*

[11]*Id.*

[12]*Williams v. Ark. Dep't of Cmty. Correction*, 2016 Ark. App. 427, at 5, 502 S.W.3d 530, 534 (citing *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858).

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Id.* (citing *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347).

Commission's province to reconcile conflicting evidence and determine the facts.[17] The

Commission has the authority to accept or reject medical opinions, and its resolution of the

medical evidence has the force and effect of a jury verdict.[18]

Arkansas Code Annotated section 11-9-102 states the following regarding and

accidental injury:

> An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.][19]

A compensable injury must be established by medical evidence supported by objective

findings,[20] which is defined as "those findings which cannot come under the voluntary

control of the patient."[21] It is clear that muscle spasms can constitute objective medical

findings to support compensability.[22]

---

[17]*Id.*

[18]*Id.*, at 5–6, 502 S.W.3d at 534 (citing *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002)).

[19]Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012).

[20]Ark. Code Ann. § 11-9-102(4)(D).

[21]Ark. Code Ann. § 11-9-102(16)(A)(i).

[22]*Estridge v. Waste Mgmt.*, 343 Ark. 276, 280, 33 S.W.3d 167, 170 (2000) (citing *Continental Express, Inc. v. Freeman*, 66 Ark. App. 102, 989 S.W.2d 538 (1999); *Univ. of Ark. for Medical Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997)).

I. *Compensability*

Appellant's first argument is that there are no new objective findings to support the ALJ's opinion that appellee sustained a compensable injury. Appellant asserts that because appellee's injury was in the same area in which he was injured prior to surgery, there was no new injury. We disagree.

The events of December 2, 2014—that appellee fell from a truck injuring his back—are not disputed by appellant; only whether those events caused a compensable injury to appellee. The facts are that appellee did have lumbar surgery on October 15, 2014, shortly before appellee's December 2, 2014 injury. However, contrary to Dr. Sprinkle's assertion in his January 2, 2014 report that appellee "was on work restrictions from Dr. Peek at the time of injury[,]" Dr. Peek's November 18, 2014 report expressly states that appellee "may return to work on 12/01/2014 to regular work." Accordingly, appellee did not have restrictions on his work when he returned to work on December 1, 2014. In fact, Dr. Peek's report states that appellee's problems had "improved" post-surgery.

Additionally, appellee returned to work on December 1, 2014, working that day without complaint as well as on December 2, 2014, up until the accident that gave rise to his injury. It was not until after the December 2, 2014 accident, that the medical reports start to note moderate to severe pain and spasms. The only other time the medical records show severe pain and spasms was in the period prior to the surgery when the medical records state that appellee had "extreme functional impairment" with "severe" and "worsening" back and right lower leg pain with "neurological compromise"[23]

---

[23]This appeared in Dr. Peek's September 18, 2014 office visit report.

SLIP OPINION

Objective medical evidence is not essential to establish the causal relationship to an injury where objective medical evidence establishes the injury's existence, and a preponderance of other non-medical evidence establishes a causal relation to a work-related incident.[24] The question is not whether there are new objective findings, but whether there is a new compensable injury.[25] It is the injury for which appellant seeks benefits that must be proved with objective medical findings.[26]

The objective evidence shows that appellee's injuries prior to the surgeries had been greatly improved, if not eradicated, by the time he returned to work—after the surgery—and were aggravated by the injury he received on December 2, 2014. On January 2, 2015, Dr. Sprinkle opined that the December 2, 2014 work injury was "most likely just a [sic] aggravation of a pre-existing problem" and further stated that he thought "the meralgia paresthetica is likely related to his work injury and not necessarily a pre-existing condition[.]" Finally, though spasms were noted in appellee's medical records as a symptom before his surgery, they do not appear again in his medical records until January 22, 2015, in Dr. Sprinkle's report after appellee's injury-causing accident. This court cannot find that the Commission erred in finding that appellee had proved that he had a compensable injury.

---

[24]*Liaromatis v. Baxter Cty. Reg'l Hosp.*, 95 Ark. App. 296, 299, 236 S.W.3d 524, 526–27 (2006) (citing *Wal-Mart Stores v. Van Wagner*, 337 Ark. 443, 990 S.W.2d 522 (1999); *Wal-Mart Stores v. Leach*, 74 Ark. App. 231, 48 S.W.3d 540 (2001)).

[25]*Id.*, 95 Ark. App. at 299, 236 S.W.3d at 527.

[26]*Id.*

## II. *Healing Period*

Appellant's second argument is that the finding that appellee remained in his healing period after January 22, 2015, is erroneous. Appellant argues that this court should credit Dr. Sprinkle's January 22, 2015 opinion—that any further treatment was related to the pre-existing spondylolisthesis and surgery—as the end of appellee's healing period, if this court finds that appellee has proven a compensable injury. This court does not agree.

On January 2, 2015, Dr. Sprinkle stated his opinion that appellee's "work injury" was "most likely just a [sic] aggravation of a pre-existing problem" and that appellee's "meralgia paresthetica [was] likely related to his work injury and not necessarily a pre-existing condition[.]" On January 22, 2015, Dr. Sprinkle stated that "[t]here [was] no need for future follow-up with [him]" because "[a]ny further care really more [sic] related to his pre-existing spondylolisthesis and surgery which will be followed  by Dr. peak [sic]." Accordingly, Dr. Sprinkle appears to have given contrary opinions, one in which appellee experienced a new work injury that aggravated his pre-existing conditions and another in which appellee was not suffering from a new injury with his symptoms simply being a continuation of previous, pre-surgery symptoms. The ALJ cited his January 2, 2015 opinion and not his January 22, 2015 opinion.  We defer to the Commission's findings of credibility and the resolution of conflicting evidence.[27]

With regard to appellee's release to return to work, this court notes that Dr. Smart ordered appellee to remain off work until released by Dr. Peek in his December 8, 2014

---

[27]*Fulbright v. St. Bernard's Med. Ctr.*, 2016 Ark. App. 417, at 4, 502 S.W.3d 540, 543 (citing *Moore v. Ark. State Highway & Transp. Dep't*, 2013 Ark. App. 752).

report. While Dr. Sprinkle returned appellee to work without restriction on January 22, 2015—after noting that his injection treatment for appellee's meralgia paresthetica had not been successful—there is no medical record from Dr. Peek releasing appellee to return to work. It is the Commission's duty to resolve conflicts in medical testimony and evidence.[28] We find no error.

### III. *Award of Medical Benefits*

Appellant's final argument is that the award of medical benefits to appellee in the form of surgery is not supported by any medical evidence. There is no requirement that objective evidence, or a doctor's opinion, is required before the Commission may determine that further medical treatment in connection with a work injury is reasonably necessary.[29] Claimant testified—and he was found "extremely credible"—that Dr. Peek was recommending surgery. There was no evidence before the Commission to the contrary. We find no error.

Affirmed.

VIRDEN, GLADWIN, WHITEAKER, and VAUGHT, JJ., agree.

KLAPPENBACH, J., dissents.

---

[28] *Ark. Highway & Transp. Dep't v. Wiggins*, 2016 Ark. App. 364, at 3, 499 S.W.3d 229, 232 (citing *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008)).

[29] *Butler v. Lake Hamilton Sch. Dist.*, 2013 Ark. App. 703, at 8, 430 S.W.3d 831, 836 (2013) (citing *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 6–7, 374 S.W.3d 51, 55 (2010) (the cases cited by the appellant in that case did not apply because those cases addressed aggravations of preexisting conditions and whether the aggravations were separate compensable injuries; the Commission had not ruled that there was an aggravation of a preexisting condition or a new and separate compensable injury")).

**N. Mark Klappenbach, Judge, dissenting.** I respectfully dissent. The majority opinion has affirmed the Commission's conclusion that Smith provided objective evidence to prove the existence of an aggravation injury to his recently-operated-on lumbar spine. There is simply no substantial evidence of record to support this finding, and our standard of review does not insulate the Commission from requiring that proof. To be clear, in this case, causation and credibility are not the relevant issues. Whether Smith proved the existence of a new compensable injury is the issue. The workers' compensation statutes are to be strictly construed as written, and our court has construed the requirement of objective findings to mean objective findings caused by the accidental injury for which the claimant seeks benefits. Those findings are absent here. Consequently, I would reverse.

As set out in the majority opinion, Smith had long-standing non-work-related low-back problems: Smith suffered from grade 1-2 spondylolisthesis, spinal stenosis, and degenerative changes to his spine. These problems led to major surgery (lumbar fusion at L5-S1 with allograft and decompression) in mid-October 2014. The medical records leading up to that surgery consistently report the presence of moderate lumbar spasms and diminished paraspinous muscle tone, which are objective findings.

In a November 14, 2014 follow-up visit, Dr. Peek noted moderate improvement in how Smith felt but recited the same objective findings: diminished paraspinous muscle tone and moderate spasms. Smith was told to continue with his current pain medications (Percocet and Tylenol with codeine) as he healed, and he was prescribed an additional narcotic pain medication (Roxicodone). Dr. Peek released Smith to return to regular work on December 1, 2014, which Smith did without incident that day.

There is no dispute that Smith fell at work and hit his back. The company doctor noted Smith's prior surgery and Smith's complaints of pain and burning that were "very similar to what he had prior to surgery." The company doctor did not prescribe anything because Smith had already been prescribed oxycodone[1] and a muscle relaxer by Dr. Peek. Subsequent x-rays of Smith's low back showed the healing lumbar surgery and the degenerative changes in Smith's spine.

Dr. Sprinkle, who Smith saw in early January 2015, said that it was surprising that Smith went back to work so soon after fusion surgery. Dr. Sprinkle stated his belief that this was "really more related to his pre-existing spondylolisthesis and surgery which will be followed by Dr. Peek." Dr. Sprinkle assessed this as "most likely just an aggravation of a pre-existing problem" although the "meralgia paresthetica[2] is likely related to his work injury and not necessarily a pre-existing condition." Dr. Sprinkle palpated trigger points[3] in Smith's lumbar muscles and gave him an injection for pain.

---

[1]The majority inexplicably states that Smith had been prescribed a new medication– oxycodone– since the work incident on December 2, 2014, and that Drs. Sprinkle and Peek noted that this was a new medication. This is incorrect. Dr. Peek's notes indicate that Smith had been prescribed this medication dating back to his release from the hospital after his surgery on October 15, 2014, given that Percocet contains oxycodone. *See Physician's Desk Reference*, 71st edition (2017). Dr. Peek prescribed Smith Roxicodone on November 14, 2014. According to the Federal Drug Administration, Roxicodone contains oxycodone. Nowhere do the doctors note oxycodone to be a new medication.

[2]"Meralgia paresthetica" is defined generally as numbness or pain not caused by injury to the limb but rather injury to a nerve that extends from the spinal column. *See Moseby's Medical Dictionary*, 10th edition (2017). Notably, numbness or pain is not an objective finding of injury for purposes of workers' compensation, and there was no objective finding of nerve injury.

[3]This means that the doctor felt or compressed an area on the body sensitive to touch, which might elicit a pain or tenderness response in the patient. *See Moseby's, supra.*

In mid-January 2015, Smith returned to his surgeon, Dr. Peek, who noted again the presence of moderate spasms and a diminished paraspinous muscle tone. Peek also recorded Smith's complaints of pain. An MRI was consistent with Smith's prior surgery and degenerative spine condition. EMG testing was interpreted as either normal or, in certain areas, not obtainable. In subsequent visits, medications were continued and Smith remained off work. On this evidence, the ALJ and the Commission deemed the presence of spasms to constitute the required objective findings of a compensable injury.

Although we give deference to the Commission on issues of weight of evidence and credibility of witnesses, the Commission is not so insulated as to render appellate review meaningless. *Randolph v. Staffmark*, 2015 Ark. App. 135, 456 S.W.3d 389. Smith had to prove the existence of this aggravation injury by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2007); *see also Steak House v. Weigel*, 101 Ark. App. 81, 270 S.W.3d 365 (2007). The aggravation, being a new injury with an independent cause, must meet all of the requirements for a compensable injury. *Centria, Inc. v. Bailey*, 2015 Ark. App. 271. Objective findings are those findings that cannot come under the voluntary control of the patient. *Id.*

Arkansas Code Annotated section 11-9-102(4) has been interpreted to require objective medical findings to establish a new injury when the claimant seeks benefits for an aggravation of a preexisting condition. *See Mooney v. AT & T*, 2010 Ark. App. 600, 378 S.W.3d 162; *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007); *King v. Peopleworks*, 97 Ark. App. 105, 244 S.W.3d 729 (2006); *Liaromatis v. Baxter Cnty. Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 524 (2006). The City of El Dorado argues

compellingly that Smith did not present objective findings to support the existence of a new injury that occurred at work on December 2, 2014. The City of El Dorado cites to, and relies heavily on, the *Mooney* and *Liaromatis* cases.

In *Mooney*, neither Mooney's back muscle spasms nor his left L5–S1 radiculopathy he said he suffered in November 2005 satisfied the objective medical findings requirement because he had been experiencing muscle spasms and radicular pain in his lower back prior to his employment in 2001. Mooney's job required that he load and deliver boxes from a truck. Mooney's MRI likewise failed to satisfy the objective medical findings requirement where the MRI following his alleged injury had not changed since his previous MRI taken prior to his employment. Thus, new objective findings were necessary but lacking.

In *Liaromatis v. Baxter County Regional Hospital*, 95 Ark. App. 296, 300, 236 S.W.3d 524, 527 (2006), the claimant's lumbar spine after the July 26, 1999, work incident was virtually unchanged from the condition diagnosed by tests performed in 1996 that showed a small central lumbar disk bulge. Liaromatis had worked as a paramedic for fourteen years. Liaromatis was deemed credible in stating that he suffered the onset of back pain at work that day when he lifted a patient and felt a tearing and popping sensation. The onset of his pain and the popping sensation were not deemed objective indicators of a new injury as required by the Workers' Compensation Act. Liaromatis's descriptions provided proof of a causal connection but not the existence of a new compensable injury. Our court held that Liaromatis bore the burden to present objective medical findings establishing a compensable injury on that particular day. *Id.* at 299. Our court rejected Liaromatis's contention that this added to the requirement of merely presenting objective findings that an injury exists.

We have interpreted the workers' compensation act in precisely this manner, and the legislature has not seen fit to amend the workers' compensation statutes to alter or reverse this interpretation. *See Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344.

I cannot distinguish the present appeal in any meaningful way from *Mooney* and *Liaromatis*. The majority opinion does not mention, much less distinguish, the *Mooney* case. The majority opinion cites to *Liaromatis* for the proposition that a claimant must prove a new compensable injury, but it does not explain how this case differs from the requirements placed on the claimant in *Liaromatis*. Our standard of review does not insulate the Commission from requiring objective findings to support the existence of a new injury on December 2, 2014. Smith's subjective complaints do not suffice, and the objective findings of lumbar muscle spasms and diminished muscle tone were present before and after surgery, as recently as two weeks prior to December 2, 2014. Smith had continuously been prescribed narcotic pain medications, as recently as two weeks prior to December 2, 2014. Thus, I would reverse on the issue of compensability because there is no substantial evidence to support the Commission's decision that Smith proved the existence of a new compensable injury with the required objective findings. This would necessitate reversal of the TTD and medical treatment awarded.

I would add that, even if the injury was deemed a compensable aggravation injury, Smith failed to prove that he was entitled to the unknown surgery that Smith said Dr. Peek was recommending he undergo sometime in 2016. There was no medical record or report to explain what that further surgery might be; Smith did not explain in any fashion what the surgery was or what it was designed to treat. A claimant bears the burden to establish by

19

a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury.    *See Mullin v. Duckwall Alco*, 2016 Ark. App. 122, 484 S.W.3d 283;*Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, 460 S.W.3d 814. There is no evidence, much less substantial evidence, to support that this unknown surgery was reasonable and necessary medical treatment in relation to what was alleged to be a compensable aggravation injury.

As sympathetic as we might be to Smith's situation, we are duty bound to strictly apply the workers' compensation statutes and to adhere to our existing precedent.  For the foregoing reasons, I dissent.

*M. Keith Wren*, for appellant.

*F. Mattison Thomas III*, for appellee.