|1BN. Mark Klappenbach, Judge, dissenting. I respectfully dissent. The majority opinion has affirmed the Commission’s conclusion that Smith provided objective evidence to prove the existence of an aggravation injury to his recently-operated-on lumbar spine. There is simply no substantial evidence of record to support this finding, and our standard of review does not insulate the Commission from requiring that proof. To be clear, in this case, causation and credibility are not the relevant issues. Whether Smith proved the existence of a new compensable injury is the issue. The workers’ compensation statutes are to be strictly construed as written, and our court has construed the requirement of objective findings to mean objective findings caused by the accidental injury for which the claimant seeks benefits. Those findings are absent here. Consequently, I would reverse. As set out in the majority opinion, Smith had long-standing non-work-related low-back problems: Smith suffered from grade 1-2 spondylolisthesis, spinal stenosis, and degenerative changes to his spine. These problems led to major surgery (lumbar fusion at L5-S1 with allograft and decompression) in mid-October 2014. The medical records leading up to that surgery consistently report the presence of moderate lumbar spasms and diminished paras-pinous muscle tone, which are objective findings. In a November 14, 2014 follow-up visit, Dr. Peek noted moderate improvement in how Smith felt but recited the same objective findings: diminished paraspinous muscle tone and moderate spasms. Smith was told to continue with his current pain medications (Percocet and Tylenol with codeine) as he healed, and he was prescribed an additional narcotic pain medication (Roxicodone). Dr. Peek released Smith to return to regular work on December 1, 2014, which Smith did without incident that day. | ifiThere is no dispute that Smith fell at work and hit his back. The company doctor noted Smith’s prior surgery and Smith’s complaints of pain and burning that were “very similar to what he had prior to surgery.” The company doctor did not prescribe anything because Smith had already been prescribed oxycodone[1] and a muscle relaxer by Dr. Peek. Subsequent x-rays of Smith’s low back showed the healing lumbar surgery and the degenerative changes in Smith’s spine. Dr. Sprinkle, who Smith saw in early January 2015, said that it was surprising that Smith went back to work so soon after fusion surgery. Dr. Sprinkle stated his belief that this was “really more related to his pre-existing spondylolisthesis and surgery which will be followed by Dr. Peek.” Dr. Sprinkle assessed this as “most likely just an aggravation of a pre-existing problem” although the “meralgia paresthetica[2] is likely related to his work injury and not necessarily a pre-existing condition.” Dr. Sprinkle palpated trigger points[3] in Smith’s lumbar muscles and gave him an injection for pain. |17In mid-January 2015, Smith returned to his surgeon, Dr. Peek, who noted again the presence of moderate spasms and a diminished paraspinous muscle tone. Peek also recorded Smith’s complaints of pain. An MRI was consistent with Smith’s prior surgery and degenerative spine condition. EMG testing was interpreted as either normal or, in certain areas, not obtainable. In subsequent visits, medications were continued and Smith remained off work. On this evidence, the ALJ and the Commission deemed the presence of spasms to constitute the required objective findings of a compensable injury. Although we give deference to the Commission on issues of weight of evidence and credibility of witnesses, the Commission is not so insulated as to render appellate review meaningless. Randolph v. Staffmark, 2015 Ark. App. 135, 456 S.W.3d 389. Smith had to prove the existence of this aggravation injury by medical evidence supported by objective findings. Ark. Code Ann. § 11—9—102(4)(D) (Supp. 2007); see also Steak House v. Weigel, 101 Ark. App. 81, 270 S.W.3d 365 (2007). The aggravation, being a new injury with an independent cause, must meet all of the requirements for a compensable injury. Centria, Inc. v. Bailey, 2015 Ark. App. 271. Objective findings are those findings that cannot come under the voluntary control of the patient. Id. Arkansas Code Annotated section 11-9-102(4) has been interpreted to require objective medical findings to establish a new injury when the claimant seeks benefits for an aggravation of a preexisting condition. See Mooney v. AT & T, 2010 Ark. App. 600, 378 S.W.3d 162; Long v. Wal-Mart Stores, Inc., 98 Ark. App. 70, 250 S.W.3d 263 (2007); King v. Peopleworks, 97 Ark. App. 105, 244 S.W.3d 729 (2006); Liaromatis v. Baxter Cnty. Reg’l Hosp., 95 Ark. App. 296, 236 S.W.3d 524 (2006). The City of El Dorado argues 11scompellingly that Smith did not present objective findings to support the existence of a new injury that occurred at work on December 2, 2014. The City of El Dorado cites to, and relies heavily on, the Mooney and Liaromatis cases. In Mooney, neither Mooney’s back muscle spasms nor his left L5-S1 radiculopa-thy he said he suffered in November 2005 satisfied the objective medical findings requirement because he had been experiencing muscle spasms and radicular pain in his lower back prior to his employment in 2001. Mooney’s job required that he load and deliver boxes from a truck. Mooney’s MRI likewise failed to satisfy the objective medical findings requirement where the MRI following his alleged injury had not changed since his previous MRI taken pri- or to his employment. Thus, new objective findings were necessary but lacking. In Liaromatis v. Baxter County Regional Hospital, 95 Ark. App. 296, 300, 236 S.W.3d 524, 527 (2006), the claimant’s lumbar spine after the July 26, 1999, work incident was virtually unchanged from the condition diagnosed by tests performed in 1996 that showed a small central lumbar disk bulge. Liaromatis had worked as a paramedic for fourteen years. Liaromatis was 'deemed credible in stating that he suffered the onset of back pain at work that day when he lifted a patient and felt a tearing and popping sensation. The onset of his pain and the popping sensation were not deemed objective indicators of a new injury as required by the Workers’ Compensation Act. Liaromatis’s descriptions provided proof of a causal connection but not the existence of a new compensable injury. Our court held that Liaromatis bore the, burden to present objective medical findings establishing a compensable injury on that particular day. Id. at 299, 236 S.W.3d 524, 526-27. Our court rejected Liaromatis’s contention that this added to the requirement of merely presenting objective findings that an injury exists. |19We have interpreted the workers’ compensation act in precisely this manner, and the legislature has not seen fit to amend the workers’ compensation statutes to alter or reverse this interpretation. See Vaughn v. Midland Sch. Dist., 2012 Ark. App. 344. I cannot distinguish 'the present appeal in any meaningful way from Mooney and Liaromatis, The majority opinion does not mention, much less distinguish, the Mooney casé. The majority opinion cites to Liaromatis• for the proposition that a claimant must prove a new compensable injury, but it does not explain how this case differs from the requirements placed on the claimant in Liaromatis. Our standard of review does not insulate the Commission from requiring objective findings to support the existence of a new injury on December 2, 2014. Smith’s subjective complaints do not suffice, and the objective findings of lumbar muscle spasms and diminished muscle tone were present before and ,, after surgery, as recently as two weeks prior to December 2, 2014. Smith had continuously been prescribed narcotic pain medications, as recently as two weeks prior to December 2, 2014. Thus, I would reverse on the issue of compensability because there is no substantial evidence to support the Commission’s decision that Smith proved the existence of a new com-pensable injury with the required objective findings. This would necessitate reversal of the TTD and medical 'treatment awarded. I would add that, even if the injury was deemed a compensable aggravation injury, Smith failed to prove that he was entitled to the unknown surgery that Smith said Dr. Peek was recommending he undergo sometime in 2016. There was no medical record or report to explain what that further surgery might be; Smith did not explain in any fashion what the surgery was or what it was designed to treat. A claimant bears the burden to establish by \9M& preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury. See Mullin v. Duckwall Alco, 2016 Ark. App. 122, 484 S.W.3d 283; Cossey v. Pepsi Beverage Co., 2015 Ark. App. 265, 460 S.W.3d 814. There is no evidence, much less substantial evidence, to support that this unknown surgery was reasonable and necessary medical treatment in relation to what was alleged to be a compensable aggravation injury. As sympathetic as we might be to Smith’s situation, we are duty bound to strictly apply the workers’ compensation statutes and to adhere to our existing precedent. For the foregoing reasons, I dissent. . The majority inexplicably states that Smith had been prescribed a new medication-oxyco-done-since the work incident on December 2, 2014, and that Drs. Sprinkle and Peek noted that this was a new medication. This is incorrect. Dr. Peek's notes indicate that Smith had been prescribed this medication dating back to his release from the hospital after his surgery on October 15, 2014, given that Percocet contains oxycodone. See Physician's Desk Reference, 71st edition (2017). Dr. Peek prescribed Smith Roxicodone on November 14, 2014. According to the Federal Drug Administration, Roxicodone contains oxycodone. Nowhere do the doctors note oxycodone to be a new medication. . "Meralgia paresthetica” is defined generally as numbness or pain not caused by injury to the limb but rather injury to a nerve that extends from the spinal column. See Moseby’s Medical Dictionary, 10th edition (2017). Notably, numbness or pain is not an objective finding of injury for purposes of workers’ compensation, and there was no objective finding of nerve injury. . This means that the doctor felt or compressed an area on the body sensitive to touch, which might elicit a pain or tenderness response in the patient. See Moseby’s, supra.