

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-408

| | |
|---|---|
| ST. JEAN INDUSTRIES, INC., AND TRAVELERS CASUALTY INSURANCE CO.<br><br>APPELLANTS<br><br>V.<br><br>JERRY LYNN EZELL<br><br>APPELLEE | **Opinion Delivered:** November 2, 2016<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G405752]<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

This appeal follows the February 17, 2016 decision of the Workers' Compensation Commission (Commission) affirming the June 15, 2015 opinion of the Administrative Law Judge (ALJ) that Jerry Lynn Ezell sustained a compensable injury to his left big toe, that Ezell imparted notice to St. Jean Industries, Inc. (St. Jean), of his injury, and that Ezell proved by a preponderance of the evidence that he was entitled to temporary total–disability benefits from May 29, 2014 to September 14, 2014.

St. Jean raises three points on appeal: (1) that the Commission's finding that Ezell sustained a compensable injury and that he is entitled to medical expenses and other benefits is not supported by substantial evidence; (2) that the Commission's finding that the injury is compensable is in error as a matter of law; and (3) that the Commission's finding that Ezell gave notice of his injury on February 14, 2014 is not supported by substantial evidence. We find no merit in these arguments, and we affirm.

SLIP OPINION

## I. *Facts*

Ezell was the only person to testify at the hearing before the ALJ on March 18, 2015. At the hearing Ezell testified that he began working for St. Jean in 2007 as a machine operator, manufacturing aluminum suspension parts for the automotive industry. Before he was laid off in December 2013, he had been a supervisor for two years. Ezell was rehired in January 2014 as a machine operator on a different machine. Since the layoff, the solid machine parts Ezell worked with had been replaced with hollow parts, which, unlike the prior parts Ezell had worked with, collected coolant inside them as they were machined. As Ezell pulled the parts off the machine, the coolant poured onto his feet, soaking his shoes and socks. After three weeks, on February 13, 2014, Ezell's left foot began to hurt while he was at work. When he got home and took off his boots, he observed a pea-sized blister on his left big toe. Ezell testified that he had been wearing the boots for work for about six months when the blister appeared. Ezell testified that he was on his feet while he worked at the machine, that he walked from the machine to the deburring station, and that the two stations were together in a small area.

Ezell testified that he reported the blister to the technical assistant, Roy Lawrence, the next day. Ezell explained that when a supervisor is not present, the technical assistant is in charge, and he described the position as "a supervisor that's not allowed to discipline employees." Ezell testified that he told Lawrence that he was diabetic and that he needed to do something about his condition but that Lawrence "did not do anything in response to me telling him about the blister." Ezell testified that he reported the blister to the other two technical assistants, Jimmy House and Anthony Lawson, within a day or two of observing

SLIP OPINION

the blister. Mark Lee, Ezell's supervisor who ranked above the technical assistants, was not present during Ezell's shift; however, Ezell testified that he took a picture of the affected toe and sent it to Jimmy House. House then told Ezell that he reported the blister to Supervisor Lee and had forwarded the picture to Lee.

Ezell called his family doctor on February 14, 2014, and made an appointment for February 24, 2014. Ezell testified that, until his appointment, he continued to work and that he wrapped his toe in gauze and applied peroxide to the wound to try to keep it dry and clean. Ezell stated that during the appointment, Dr. Lee Vaughan took a culture to determine the type of infection Ezell had, and he prescribed the first round of antibiotics and a topical application. In his progress notes, Dr. Vaughan noted "[B]lister on bottom of 1st toe (L) foot, getting worse" and wrote that Ezell had a diabetic foot ulcer. Dr. Vaughan also wrote that Ezell "works in coolant water" and that the coolant "causes boots to fall apart." Further down, Dr. Vaughan noted "[G]et waterproof chemical resistant boots," and he prescribed Gentamicin ointment "for toe."

Ezell testified that he went back to see his doctor on March 10, 2014, and Dr. Vaughan changed the antibiotic because the original one had not been effective. The progress notes from that appointment show that Ezell had ordered new work boots and that he still had a "small ulcer." Ezell took a note from Dr. Vaughan to the human-resources representative, Aimee Branscum, and offered to show her his toe, but she declined to see it.

Ezell testified that two weeks before his toe was amputated, he requested that Lee move him to a different machine or a different shift where a different machine would be available, but Lee refused and told Ezell that other employees were ahead of him in the same

requests. Ezell testified that he explained that his toe was not healing and was getting worse and that he offered to show Lee a new picture, to which Lee responded that he did not want to see either the new picture or the first picture that had been sent to him.

Ezell testified that around May 29, 2014, he visited Dr. Vaughan again after his toe had gotten drastically worse overnight. Ezell explained that his wound progressed from blisters to "double in size" and he could not get his boot on his foot. Dr. Vaughan referred Ezell to Springhill Baptist Hospital in North Little Rock where Ezell was admitted. Dr. Martin Siems examined Ezell the day after he had been admitted and scheduled surgery. Ezell testified that he called Branscum to let her know that he was being admitted to the hospital. Dr. Siems amputated Ezell's toe on May 31, 2014.

On June 9, 2014, Ezell submitted a short–term disability-income-benefits form. On the form, Dr. Vaughan checked the box marked "sickness" rather than the box marked "accident." Dr. Vaughan also checked the box indicating that the injury did not arise from Ezell's employment.

On June 15, 2015, the ALJ entered its findings of fact and conclusions of law. The ALJ found that Ezell proved by a preponderance of the evidence that he had sustained a compensable injury to his left big toe and that he had provided notice to St. Jean under Arkansas Code Annotated section 11-9-701 (Repl. 2012) on February 14, 2014. The ALJ also found that Ezell proved by a preponderance of the evidence that all of the treatment of the injury, including his visits to Dr. Vaughan and the amputation and related treatment by Dr. Siems, was reasonable and necessary. The ALJ found that Ezell proved by a preponderance of the evidence that he was entitled to temporary total-disability benefits

 

from May 29, 2014 to September 14, 2014. On appeal the Commission affirmed and adopted the ALJ's findings. St. Jean timely appealed the decision.

## II. *Standard of Review*

Where the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the findings of the Commission and will affirm if those findings are supported by substantial evidence. *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, at 2, 430 S.W.3d 136, 138. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, at 6, 381 S.W.3d 869, 872. We defer to the Commission's findings on what testimony it deems to be credible, and the resolution of conflicting evidence is a question of fact for the Commission. *Id.*

## III. *Points on Appeal*

### A. Sufficiency of the Evidence of Compensability

For its first point on appeal, St. Jean argues that there was insufficient evidence to support the Commission's finding that Ezell's injury was compensable. We disagree and affirm. In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i). A compensable injury does not include an injury that was inflicted on the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Wilson*

*v. Smurfit Stone Container*, 2009 Ark. App. 800, at 6, 373 S.W.3d 347, 351; *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002).

Ezell presented to the Commission medical evidence supported by objective findings that established the existence and extent of his injury. Dr. Vaughan's progress notes from the February 24, 2014 appointment show that he examined Ezell's toe, observed a blister, and prescribed antibiotics and a topical ointment. Medical records show that Ezell went back to Dr. Vaughan on March 10, 2014, and that the physician prescribed a different antibiotic to try and heal the wound that was slightly improved but still present.

Around May 29, 2014, Ezell went to see Dr. Vaughan again, and the doctor sent Ezell to the hospital. When Ezell arrived at Springhill Baptist Hospital, Dr. Siems examined Ezell's toe and determined that the toe had to be amputated, which medical records confirm.

Based on our review of the above testimony and evidence, we hold that the Commission did not err in its determination that the existence and extent of Ezell's injury was established by objective medical evidence.

The second prong of our compensable-injury analysis is whether the Commission erred in finding that the testimony and evidence established a causal connection between the injury and a work-related incident. St. Jean argues that the Commission erred "in interpreting these medical notes as proof of causation and contradictory to Dr. Vaughan's indication the foot ulcer was not work-related"; however, our supreme court has held that "[o]bjective medical evidence is . . . not essential to establish the causal relationship between the injury and a work-related accident where objective medical evidence establishes the existence and extent of the injury, and a preponderance of other nonmedical evidence

SLIP OPINION

establishes a causal relation to a work-related incident." *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 447, 990 S.W.2d 522, 524 (1999). The plethora of possible causes for work-related injuries includes many that can be established by common-sense observation and deduction. *Id*. To require medical proof of causation in every case appears out of line with the general policy of economy and efficiency contained within the workers' compensation law. *Id*.

At the hearing, Ezell testified that he had felt pain in his foot while he was at work on February 13, 2014. When he arrived home after his shift and removed his boots Ezell saw a blister that had not been there before. Ezell testified that he was either on his feet or walking during his shift and that coolant soaked his boots, socks, and feet such that his feet were brown from the leather dye of his boots at the end of his work day. Aside from Ezell's testimony, Dr. Vaughan's progress notes included mention of coolant soaking Ezell's feet at work and the notations "works in coolant water" that "causes boots to fall apart" and that he indicated that Ezell should "get waterproof chemical resistant boots."

We find no error in the Commission's finding that Ezell's compensable injury was established by objective medical evidence and that there was sufficient other evidence that the injury was work related. On this point we affirm.

## B. Compensability as a Matter of Law

For its second point on appeal, St. Jean argues that the Commission was incorrect as a matter of law as to its finding that Ezell's injury was compensable. Specifically, St. Jean argues that the Commission impermissibly ignored Dr. Vaughan's objective notation indicating that he did not believe the injury was work related and that the Commission

ignored other medical evidence suggesting that Ezell's injury was not work related. St.

Jean's argument is not well taken, and on this point we affirm.

The Commission has the duty of weighing medical evidence, and the resolution of

conflicting evidence is a question of fact for the Commission. *Stone v. Dollar Gen. Stores*, 91

Ark. App. 260, 266, 209 S.W.3d 445, 449 (2005). It is the province of the Commission to

weigh conflicting medical evidence; however, the Commission may not arbitrarily disregard

medical evidence or the testimony of any witness. *Id*.

On the short-term disability-income-benefits form, Dr. Vaughan checked the box

labeled "sickness" rather than the box labeled "accident," and Dr. Vaughan also checked

"no" in answer to the question, "Did disability arise from patient's employment?" St. Jean

contends that that Dr. Vaughan's responses on the form support its argument that the only

evidence that the injury was caused by Ezell's working condition was subjective. St. Jean

also argues that Dr. Vaughan's progress notes show that he believed that the blister was

related to a fungus and that the Commission ignored this evidence.

The Commission addressed Dr. Vaughan's statement on the disability- certification

form that Ezell's injury did not arise from employment, and cited *Poulan*, *supra*, in which

this court held that the Commission is authorized to accept or reject a medical opinion and

is authorized to determine its medical soundness and probative value:

> Based on the evidence, I cannot credit this particular statement by Dr.
> Vaughan. First, it is inconsistent with his own medical records, which document the
> onset of the blister as a result of Claimant's work at St. Jean. Second, it is simply a
> checked box on a form, with no accompanying explanation. Finally, to the extent
> that it reflects Vaughan's views, it does not comport with the balance of the evidence
> in this case.



The Commission set forth the "balance of the evidence" that it considered in making its decision:

> Vaughan noted that the blister was stage 3, on the plantar surface and did not show signs of cellulitus. He assessed the Claimant as having a "diabetic foot ulcer," counseled him to "get waterproof chemical resistant boots," and prescribed Gentamicin ointment.
>
> When Claimant returned to Vaughan on March 10, 2014, the ulcer was smaller but still had a "wet" area. No edema or erythema was found. He was again assessed as having a diabetic foot ulcer and was prescribed Nystatin.
>
> Dr. Vaughan filled out an attending physician's statement for Claimant as part of the latter's quest for disability benefits. Therein, he wrote on June 10, 2014 that Claimant's diagnosis and concurrent conditions were 'Cellulitis infection L great toe/L great Toe amputation'. The doctor added that the toe was amputated on May 31, 2014. He also stated that disability would be prolonged because the surgical site was not healing.

The Commission acknowledged that Dr. Vaughan checked "no" in answer to the question of whether the disability arose from employment. The Commission also set forth the three surgical procedures Dr. Siems performed on Ezell's toe.

The Commission is charged with weighing all the evidence presented, and it clearly did just that. In no way did the Commission ignore or arbitrarily discredit Dr. Vaughan's opinion–the Commission simply weighed the evidence differently than St. Jean would have. Because this court defers to the Commission's superior position to give weight to the testimony, we affirm on this point.

C. Notice

For their third point on appeal, St. Jean argues that there was insufficient evidence that Ezell imparted notice of his work-related injury to his employer. We disagree, and on this point we affirm.

The Commission found that Ezell reported his injury to technical assistant Lawrence the day after the injury had occurred and that he reported to the other two technical assistants within two days of the injury. The Commission stated,

> I credit this [reporting to Lawrence], along with this testimony that he told the other two assistants of the injury within the next couple of days. Moreover, I credit his testimony that the technical assistants functioned as his supervisors, and that one of the technical assistants, House, informed him that he had told the plant operator, Lee, about the injury.

Ezell testified that he had a conversation with Lee about the pictures of his toe and that Lee acknowledged having seen at least one of the pictures. Furthermore, Ezell testified that he had talked to the human-resources representative, Aimee Branscum, about his injury and that he believed that she had gotten "the ball rolling" on the paperwork regarding his injury.

Arkansas Code Annotated section 11-9-701(a)(1) and (b) sets forth the following:

> Unless an injury either renders the employee physically or mentally unable to do so, or is made known to the employer immediately after it occurs, the employee shall report the injury to the employer on a form prescribed or approved by the Workers' Compensation Commission and to a person or at a place specified by the employer, and the employer shall not be responsible for disability, medical, or other benefits prior to receipt of the employee's report of injury.

> (b)(1) Failure to give the notice shall not bar any claim:

> (a) If the employer had knowledge of the injury or death;

Knowledge of the injury by a claimant's supervisor is sufficient to impart it to the employer for purposes of section 11-9-701(b)(1)(a). *See Swifton Pub. Sch. v. Shields*, 101 Ark. App. 208, 272 S.W.3d 851 (2008) (Because employer was informed of workers' compensation claimant's injury on the date it occurred, the statutory- notice requirement was fulfilled, regardless of when the actual form was filed; claimant's testimony established

that, not only did she inform her employer of the injury on the date it occurred, but also that her employer was aware she was undergoing medical treatment for her injury because she missed work for doctor's appointments and the two surgeries, and she informed her employer of her reason for missing work.).

St. Jean asserts that "a claimant's testimony is never considered to be uncontroverted." *See Gentry v. Ark. Oil Field Servs.*, 2011 Ark. App. 786, at 3; however, this tenet is tempered by our standard that the Commission is in the superior position to determine credibility and is to be considered the fact-finder: "It is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony; once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision." *Telling Indus. v. Petty*, 2010 Ark. App. 602, at 8, 378 S.W.3d 167, 172. The Commission found Ezell to be credible, and it relied on Ezell's testimony that he reported the injury to three technical assistants, his supervisor, and the human-resources representative. We cannot say that there is no substantial basis for the Commission's finding, and we affirm.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Bassett Law Firm LLP*, by: *Tod C. Bassett*, for appellants.

*Orr Willhite, PLC*, by: *M. Scott Willhite*, for appellee.