LARRY D. VAUGHT, Judge
Appellants Northwest Arkansas Community College (NWACC) and the Public Employee Claims Division (collectively "appellants") appeal the opinion of the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the opinion of the administrative law judge (ALJ) that found appellee Heidi Migliori sustained a compensable head injury on July 28, 2016, entitling her to medical benefits, temporary total-disability benefits, and an attorney's fee. On appeal, appellants argue that substantial evidence fails to support the Commission's opinion. We affirm.
Migliori is employed as an administrative analyst for the vice president of learning at NWACC. On July 28, 2016, she arrived at work, retrieved a yoga ball from a coworker's office, placed the ball on the ground in front her desk, sat down on the ball, and began to work at her computer. She had never sat on a yoga ball before. When she needed a book behind her, she turned and instinctively pushed off from her desk, which caused her to fall off the ball and hit the left side of her head on the desk. She reported the injury to NWACC, sought medical treatment for a head injury, and later requested workers'-compensation benefits. Appellants controverted the claim, contending that Migliori did not sustain a compensable injury within the meaning of Arkansas Code Annotated § 11-9-102 and that her need for medical treatment was not related to the alleged injury but rather to preexisting medical issues.
At the April 6, 2017 hearing before the ALJ, Migliori testified that after she fell *402 off the ball, she rolled to her knees, picked up the phone, and called a coworker, Lindsey White. Migliori stated that White, along with coworker Cheryl Wagner, came to Migliori's office to check on her and that Wagner retrieved a bag of ice for Migliori's head. According to Migliori, Wagner also called Beverly Hill, NWACC human-resources representative, who filled out the first report of injury.[1] Migliori testified that she also emailed her supervisor, Dr. Ricky Tompkins, to report the incident; she signed the employee's report of accident, which stated that her injury occurred when she fell off the yoga ball; and she called her husband. Migliori said that as a result of the accident, she experienced left-side facial numbness, left-ear ringing, neck pain, vertigo (dizziness), and headaches.
Migliori testified that soon after she fell, she was seen by a NWACC nurse, who diagnosed her with a contusion and sent her to Mercy Clinic for treatment. Migliori's husband drove her to Mercy Clinic, where she was treated by APN Tu Phan. The July 28, 2016 Mercy Clinic medical report states that Migliori "hit back of head at 07:16 this morning falling off a yoga ball chair, HA, struggling to read forms here, left ear pain/pressure/numbness/tingling, shaky, denies other symptoms."
Migliori returned to Mercy Clinic on August 1, 2016, and was seen by Dr. David Sitzes. In his August 1 report, Dr. Sitzes stated that Migliori was experiencing ringing in the left ear and eye twitching. He stated that Migliori reported that the "bump is gone," but she still feels pain, and the left side of her face feels swollen. Dr. Sitzes requested head and face CT scans, which were performed on August 2, 2016. The radiology reports provide that the head and face CT scans were normal. One of the radiology reports reflects that Migliori had been diagnosed with postconcussion headache; pressure, hearing loss, and tinnitus in the left ear; vertigo; contusion of the scalp ; and visual impairment.
Migliori returned to Dr. Sitzes on August 3, 2016, with continued complaints of left-ear ringing, left-eye draining, and pain in her head. She requested a referral to her chiropractor, Dr. Kent Moore. Migliori saw Dr. Moore six times from August 4, 2016, to September 6, 2016. Dr. Moore opined in an April 6, 2017 report that Migliori's head injury was work related and was supported by objective findings; the work-related injury was the major cause for the need of his treatment; and she had reached maximum medical improvement.
Migliori admitted that she had been a patient of Dr. Moore's for cervical-, thoracic-, and lumbar-spine issues, along with headache and migraine complaints, following a car accident in April 2012 that gave her severe whiplash and headaches. She said that she had been released from Dr. Moore's treatment in April 2013 but continued to see him as needed for headaches. She said that the problems she experienced after falling off the yoga ball were "most certainly different" than the problems she had before.
Migliori stated that Dr. Moore referred her to Dr. Shawn Key, an audiologist,[2] for *403 her concussion symptoms: ringing in her ear and vertigo. Dr. Key evaluated Migliori on March 22, 2017. In his report of the same date, he stated that she had been diagnosed with a concussion after she fell off a yoga ball and hit her head with force on a desk. Dr. Key diagnosed her with mild left-unilateral sensory hearing loss. He acknowledged that she suffered from mild hearing loss in her left ear in 2012, yet he also opined that Migliori's change in tinnitus, postconcussion, could be due to swelling around the nerves and that her vertigo "is more likely than not a result of the impact to her head, which resulted in a concussion." According to Migliori's testimony, Dr. Key's treatment improved her condition greatly.
Migliori stated that Dr. Sitzes restricted her from work for two weeks. Thereafter, he released her for light-duty work for two weeks. She said that Dr. Sitzes released her to return to work full duty on August 28, 2016. She stated that she was no longer experiencing problems related to the accident and has been working full time since September 1, 2016. Finally, Migliori testified that before the July 28 incident, she was not having any problems and was functioning at full capacity.
Lindsey White, executive assistant to the president of NWACC, testified that on July 28, 2016, she received a call from Migliori that she had fallen and needed help. White, along with Cheryl Wagner, went into Migliori's office and found her on her knees on the ground with her hands on the back of her head. Migliori reported that she had fallen off the yoga ball. White said Migliori looked like she had been crying "a little bit." White stated that Migliori complained about her head and was holding her head, but she (White) did not see any cut or bruise on Migliori's head.
Wagner, administrative assistant to the president of NWACC, testified that White called her in the morning of July 28 and said that Migliori had fallen. Wagner stated that Migliori said that she had hit her head and was "a little bit upset." Migliori asked Wagner if there was a bump on her head, and Wagner said, "Honestly, I don't remember if there was. It was not of any great significance." Wagner said that there was no cut and there was no bleeding; however, she offered to get ice in case it "would start swelling." Wagner further testified that she "didn't think much of [the incident]. Yes, she fell and she bumped her head. And yes, it would have hurt, you know. But other than that, you know, I really didn't think much of it. I mean she seemed to be acting okay." During cross-examination, Wagner was shown a picture:[3]
Q: Cheryl, I'm going to show you a picture. It's marked July 28th, 2016 on this phone.
A: Okay.
Q: Does that look like what you saw on her head that morning?
A: No. But she has real thick hair. And I'll be honest with you, you know, I just kind of moved it. And no, I did not see that.
Q: So-you're not a doctor, are you?
A: No.
Q: So if a doctor said that she had a contusion on the head, you wouldn't have any reason to dispute that, would you?
A: I guess not. No.
*404 On April 20, 2017, the ALJ issued an opinion, finding that Migliori met her burden of proving a compensable head injury and was entitled to medical benefits, temporary total-disability benefits, and an attorney's fee. The ALJ found that there was "no question that [Migliori] fell at work hitting her head." The ALJ also found that Migliori reported the fall to coemployees; filled out forms for a work-related injury; and sought medical treatment for her head injury. The ALJ further found that Migliori's testimony was credible and was supported by two witnesses and the medical evidence. The ALJ found that medical records reflect that Migliori suffered a concussion and a scalp contusion and that she was restricted from work for two weeks as per doctor's orders. The ALJ stated that while Migliori suffered from ringing in the ears before the July 2016 fall, based on Dr. Key's medical report, this condition was worsened by the 2016 fall. The ALJ further stated that there were objective findings to support the injury and that they were causally connected to Migliori's work-related incident. The ALJ found that Migliori had proved that the medical treatment she received was reasonably necessary for her compensable head injury ; thus, she was entitled to medical benefits. Finally, the ALJ found that Migliori met her burden of proving that she was taken off work for a two-week period and suffered a total incapacity to earn wages; accordingly, she was entitled to temporary total-disability benefits.
Appellants appealed the ALJ opinion to the Commission, and on September 13, 2017, the Commission issued an opinion affirming and adopting the ALJ's opinion. This appeal followed.
Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. City of El Dorado v. Smith , 2017 Ark. App. 307, at 8, 521 S.W.3d 523, 529. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. at 8-9, 521 S.W.3d at 529. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id. at 9, 521 S.W.3d at 529.
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Id. , 521 S.W.3d at 529. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. , 521 S.W.3d at 529. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. Id. , 521 S.W.3d at 529.
Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Id. , 521 S.W.3d at 529. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. Id. , 521 S.W.3d at 529. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. Id. at 9-10, 521 S.W.3d at 529. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Id. at 10, 521 S.W.3d at 529.
To receive workers'-compensation benefits, Migliori had to prove these facts: (1) that she suffered an injury arising out of *405 and in the course of her employment; (2) that the injury was caused by a specific incident identifiable by time and place of occurrence; (3) that the injury caused internal or external physical harm to her body, which required medical services or resulted in disability or death; and (4) that the injury was established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(A)(i), (D) (Repl. 2012). Objective findings are those that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).
Appellants argue on appeal that substantial evidence fails to support the Commission's finding that Migliori sustained a compensable head injury. Under this point, appellants first contend that the fall did not occur. Specifically, appellants point out that there were no witnesses to Migliori's fall, the fall did not knock her glasses off her face, and neither White nor Wagner saw a cut, bump, bruise, or swelling on Migliori's head immediately after the accident.
The Commission found that there was "no question that [Migliori] fell at work hitting her head." Substantial evidence supports this finding. Migliori testified about the details of her fall on July 28, 2016, and the injury to her head. She testified that she reported the fall immediately. This is confirmed by White and Wagner. White and Wagner testified that they found Migliori on her knees in her office with her head in her hands, reporting that she had fallen off the ball. White and Wagner both testified that Migliori looked like she had been crying and was upset. Wagner confirmed that she offered to retrieve ice for Migliori's head. While White and Wagner did not see a bruise or a cut on Migliori's head, Wagner agreed that Migliori fell, bumped her head, and that it would have hurt. Wagner was also shown a picture, taken July 28, 2016, of Migliori's head, and said that she did not see whatever was shown in the picture and that she would not dispute a doctor's statement that Migliori had a contusion on her head.
Further, Migliori signed the employee's report of accident; emailed her supervisor; spoke with NWACC's human-resource representative; spoke to the NWACC nurse, who diagnosed Migliori with a contusion; and was referred for treatment at Mercy Clinic, which she received at 9:44 a.m., within hours of her fall. The Commission found Migliori's testimony credible. The documentary evidence-forms signed by Migliori and Hill and medical records all dated July 28, 2016-corroborates Migliori's testimony. Accordingly, we hold that there is substantial evidence to support the ALJ's finding that Migliori fell off the yoga ball and suffered a head injury.
Appellants also argue that substantial evidence fails to support the Commission's finding that Migliori's head injury is supported by objective findings. Appellants focus on the July 28, 2016 medical record, which provides that Migliori "hit back of head at 07:16 this morning falling off a yoga ball, HA, struggling to read forms here, left ear pain/pressure/numbness/tingling, shaky, denies other symptoms." Appellants argue that this report, generated the day of the alleged fall, contains no objective findings-only subjective complaints. Appellants further argue that the face and head CT scans were normal.
We hold that substantial evidence supports the Commission's finding that Migliori established a compensable head injury by medical evidence supported by objective findings, namely a scalp contusion. We have held that a contusion is an objective medical finding.
*406 Ellis v. J.D. & Billy Hines Trucking, Inc. , 104 Ark. App. 118, 121, 289 S.W.3d 497, 499 (2008) (citing Parson v. Ark. Methodist Hosp. , 103 Ark. App. 178, 182, 287 S.W.3d 645, 648 (2008) (holding that contusions are objective findings because they do not come under the voluntary control of the patient) ).
We agree that there is no medical record dated July 28, 2016-the date of Migliori's injury-that contains an objective finding that supports a compensable injury; nevertheless, we hold that substantial evidence supports the Commission's finding that her head injury was supported by objective findings. Migliori testified that the NWACC nurse diagnosed her with a contusion on the day of her fall. The August 2, 2016 radiology report states that Dr. Sitzes had diagnosed her with a contusion of the scalp, which was one of the bases for his request for the face and head CT scans. Finally, after seeing a picture of Migliori's head the day of the accident, Wagner testified that she did not see whatever was depicted in the picture and that after looking at the picture she would not dispute a doctor's opinion that Migliori suffered a head contusion.
Appellants further contend that Migliori's subjective symptoms-left-side facial numbness, left-ear ringing, neck pain, vertigo (dizziness), and headaches-are preexisting conditions. Appellants point to medical records that demonstrate that Migliori has had a history of these symptoms and treatment for these symptoms as far back as 2012 and as recently as June and July 2016.
The Commission acknowledged that Migliori suffered from preexisting ringing in her ears but noted that Dr. Key found that the issue was made worse after her July 2016 fall due to swelling in the nerves. Dr. Key also acknowledged Migliori's history with vertigo following a car accident in 2012 but stated that she had not had those symptoms since that time, and her current vertigo complaint was "more likely than not a result of the impact to her head, which resulted in a concussion."
The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. St. Jean Indus., Inc. v. Ezell , 2016 Ark. App. 516, at 8, 504 S.W.3d 679, 684. Moreover, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Foster v. Kann Enters. , 2009 Ark. App. 746, at 5-6, 350 S.W.3d 796, 800. It is the province of the Commission to weigh conflicting medical evidence; however, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. St. Jean Indus. , 2016 Ark. App. 516, at 8, 504 S.W.3d at 684. Here, the Commission did not disregard the medical evidence; it weighed it, giving more weight to Dr. Key's opinion that Migliori's current complaints were caused by her fall from the yoga ball and not her preexisting conditions.
In sum, because substantial evidence supports the Commission's finding that Migliori proved a compensable head injury on July 28, 2016, we affirm.
Affirmed.
Glover and Brown, JJ., agree.

The first report of injury, signed by Hill and dated July 28, 2016, states that Migliori's injury is "Concussion," the part of the body affected is "Skull," and that the injury was caused when "Heidi pushed backwards on the yoga chair she uses as a chair at her desk and rolled off the chair hitting the back of her head on her wooden desk."

Migliori testified that Dr. Sitzes referred her to another audiologist, Dr. James Ragland, whom she saw on September 19, 2016. Dr. Ragland treated Migliori in November 2012 for complaints of "hearing loss, dizziness, sleep apnea, and headaches" and a history of migraine headaches.

The picture is not in the addendum or record.