Cite as 2019 Ark. App. 535

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-334

| | |
|---|---|
| TYSON POULTRY, INC.<br>APPELLANT<br><br>V.<br><br>FREDERICO MONTELONGO<br>APPELLEE | OPINION DELIVERED: NOVEMBER 13, 2019<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G701936]<br><br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Tyson Poultry, Inc. (Tyson), appeals the March 15, 2019 opinion of the Arkansas Workers' Compensation Commission (Commission) reversing the September 5, 2018 opinion of the administrative law judge (ALJ) and finding that Frederico Montelongo was entitled to additional medical treatment. Tyson argues that the Commission erred in arbitrarily accepting Montelongo's expert's medical opinion that the compensable injury was the cause of the need for additional medical treatment in the form of a total right-knee replacement. We affirm.

## I. *Facts*

Montelongo had been employed by Tyson for twenty-three years when he suffered a compensable injury after he slipped off a ladder and injured his right knee on September 3, 2016. Although he claims to have reported the incident to his supervisor and a nurse at Tyson, Montelongo did not receive any medical treatment until December 7, Montelongo was seen by Dr. Greg Loyd, who diagnosed him with "unspecified superficial injury of right

knee" and prescribed Vimovo. Dr. Loyd noted that Montelongo "likely has a medial menisceal [sic] tear" and planned to try conservative therapy for a few weeks. Because of Montelongo's continuing symptoms, Dr. Loyd recommended an MRI on December 28.

Dr. Loyd's January 12, 2017 medical record notes, "MRI of right knee show: joint effusion, tear of anterior horn of medial meniscus, possible associated loose body, and bakers [sic] cyst." Dr. Loyd also noted that Montelongo had some degenerative changes of the knee joint. He referred Montelongo to an orthopedist for further evaluation and treatment.

Montelongo began treatment with Dr. Russell Allison on January 25. Dr. Allison diagnosed a lateral meniscal tear and medial meniscal tear and recommended right-knee arthroscopy. On April 10, Montelongo underwent a right-knee arthroscopy with partial medial and lateral meniscectomies and a right-knee chondroplasty of patellofemoral and medial compartments.

Dr. Allison released Montelongo at maximum medical improvement on June 7. Montelongo was assessed with an impairment rating of 1 percent to the person as a whole and 3 percent left lower extremity[1] based on Table 64 on page 3/85 of *Guides to the Evaluation of Permanent Impairment*, 4th edition.

Montelongo returned to see Dr. Allison on July 24 with complaints that his symptoms had worsened since his last visit. During this visit, Dr. Allison performed an intraarticular cortisone injection and noted that Montelongo "has arthritis and will need a knee replacement at some point."

---

[1]The medical record erroneously notes the impairment rating as to the left lower extremity, but the header correctly lists the injury as "right knee lateral meniscal tear."

Montelongo, on his own, then saw Dr. Charles Pearce, another orthopedist, on July 31, and his chief complaint was noted as chronic right-knee pain. Dr. Pearce noted that x-rays he ordered and interpreted "do show moderate patellofemoral arthritis and some change of the tibial femoral joint as well." Dr. Pearce treated Montelongo with over-the-counter medications, gave him a brace for his knee, and asked him to return in six weeks, noting that an "[i]njection may be helpful but ultimately knee replacement may be indicated."

Montelongo returned to Dr. Allison on October 11, 2017. Dr. Allison stated that x-rays revealed moderate arthritis with moderate loss of joint space, sclerosis, spurring, and degenerative changes. He diagnosed Montelongo's condition as unilateral primary osteoarthritis of the right knee and gave him a cortisone injection.

Montelongo exercised his right to a one-time change of physician to Dr. Tarik Sidani. He saw Dr. Sidani on November 13, 2017, at which time Dr. Sidani noted:

ASSESSMENT AND PLAN
1. Continued right-knee pain status post arthroscopy.
2. Degenerative joint disease, right knee.

We had a long discussion about treatment options. I feel he has been treated appropriately during his postoperative course, and even after his injury. Unfortunately, at this point I do not feel anything short of total knee arthroplasty will give this patient any sustained and long-term pain relief and we have briefly discussed this procedure today. In the meantime, we will recommend continue full duty at work, intermittent use of over-the-counter anti-inflammatories and Tylenol. We will try to get him approved for a total knee arthroplasty and have him come back to discuss the surgery once it is approved.

Montelongo's counsel drafted a letter to Dr. Sidani dated January 10, 2018, requesting an opinion on whether the surgery he recommended was reasonably necessary treatment for Montelongo's compensable injury. The question posed to Dr. Sidani was whether "Mr. Montelongo's job related injury of September 3, 2016 and resulting

3

arthoscopic [sic] repair of his right knee aggravate, accellerate [sic], or contribute to his preexisting degenerative changes in his right knee so as to play any causal role in his present need for a knee replacement?" In response, Dr. Sidani checked yes and wrote "contributing cause."

A prehearing order was filed on July 2 listing Montelongo's contentions that the medical services recommended by Dr. Sidani were at least in part necessitated by his compensable injury and thus represented reasonably necessary medical services under Arkansas Code Annotated section 11-9-508 (Supp. 2017) and that Tyson has controverted his entitlement to such benefits as well as any indemnity benefits that may arise out of such medical services. Tyson's response was, "Respondent denies liability for a right total knee replacement." The parties agreed to litigate Montelongo's entitlement to the medical treatment recommended by Dr. Sidani.

A hearing was held before an ALJ on September 5, 2018. The parties stipulated that the Commission had jurisdiction over the claim, that the employee-employer-carrier relationship existed between the parties, that Montelongo sustained a compensable injury to his right knee on September 3, 2016, and that Montelongo had been paid 3 percent permanent partial disability to his right leg.

After a hearing, the ALJ filed an opinion on September 5 finding that Montelongo had failed to prove by a preponderance of the evidence that the treatment proposed by Dr. Sidani was reasonable and necessary medical treatment for his compensable right-knee injury. Montelongo appealed the finding to the Commission.

4

The Commission made an independent review of all the evidence of record and found that the greater weight of the credible evidence established that the compensable injury of September 3, 2016, played a substantial causal role in Montelongo's need for the recommended knee replacement and that Dr. Sidani's recommended treatment constituted reasonably necessary medical treatment under section 11-9-508.

On March 15, 2019, the Commission filed its opinion reversing the ALJ's opinion. The Commission found that Montelongo had proved that he was entitled to a complete and total right-knee replacement as additional medical treatment from a compensable injury suffered while employed by Tyson in September 2016. The Commission accepted Dr. Sidani's medical opinion to establish that the compensable injury was the cause of the need for the total right-knee replacement—disagreeing with the ALJ's rejection of that opinion finding that Dr. Sidani had relied on an inaccurate medical history relayed to him by Montelongo. On April 5, Tyson timely appealed the decision of the Commission.

II. *Standard of Review & Applicable Law*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Nw. Ark. Cmty. Coll. v. Migliori*, 2018 Ark. App. 286, at 7, 549 S.W.3d 399, 404. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id*. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive

5

province of the Commission. *Id*. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Id*. at 8, 549 S.W.3d at 404.

Further, it is also established law that the Commission cannot arbitrarily reject a medical opinion without explaining the rationale for its rejection of that opinion. *Roberts v. Whirlpool*, 102 Ark. App. 284, 284 S.W.3d 100 (2008). A combined reading of this rule along with the preclusion of the Commission from relying on speculative expert opinion means that the Commission should not arbitrarily accept medical opinion if such acceptance requires the Commission to speculate as to what the medical expert opinion would have been had the expert been provided factually accurate information regarding the claimant's medical history. *See Hargis v. Lovett*, 2018 Ark. App. 227, 547 S.W.3d 724 (holding that the Commission was entitled to reject medical opinion of emergency-room physician that was based on inaccurate information provided by the claimant).

### III. *Discussion*

Arkansas Code Annotated section 11-9-508(a) (Supp. 2017) requires an employer to provide medical services that are reasonably necessary in connection with the compensable injury. A claimant bears the burden to establish by a preponderance of the evidence that the treatment is reasonable and necessary and bears a causal connection to the work injury.

*Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, at 3, 460 S.W.3d 814, 817. Though causation need not be proved by medical-opinion evidence, when a claimant relies on medical opinion, that opinion must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16) (Repl. 2012). Medical opinions based on "could," "may," or "possibly" lack the definiteness required to prove compensability. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000).

Tyson submits that Montelongo relied on Dr. Sidani's opinion to establish that his need for a total right-knee replacement was caused by or contributed to his compensable injury and was not the result of Montelongo's preexisting degenerative condition in his right knee. Though the acceptance or rejection of medical-opinion evidence is within the province of the Commission, the Commission cannot arbitrarily ignore testimony or evidence without explaining why it did so. *Roberts*, *supra*. Tyson maintains that is what the Commission did in this case.

On November 13, 2017, Dr. Sidani examined Montelongo and ultimately recommended a total right-knee replacement. Dr. Sidani's treatment note indicated that Montelongo told him he did not have any knee pain prior to this injury on September 16, 2016, and that Montelongo had degenerative joint disease in his right knee.

On January 10, 2018, Montelongo's attorney wrote a letter to Dr. Sidani requesting a medical opinion as to whether the total right-knee replacement was caused by Montelongo's work injury or was necessitated by his degenerative joint disease in his right knee. In that letter, Montelongo's attorney acknowledged Montelongo's preexisting degenerative condition in his right knee but asked Dr. Sidani to "assume as fact that prior

to September 3, 2016, Mr. Montelongo had not experienced any difficulties with his right knee that were sufficient to cause him to seek medical treatment, but he has continued to experience difficulties sufficient to cause him to continuously seek such treatment thereafter." Tyson submits that Dr. Sidani was provided two critical "facts" in the letter requesting his opinion: (1) Montelongo had a degenerative condition in his right knee; (2) Montelongo was asymptomatic prior to the September 3, 2016 injury.

Dr. Sidani responded that Montelongo's compensable injury was less than a 50 percent cause of the need for the total right-knee replacement, which Tyson accordingly suggests means that Dr. Sidani believed that the degenerative-joint disease in Montelongo's right knee was more than a 50 percent cause of the need for the right-knee replacement. Montelongo's attorney wrote back to Dr. Sidani asking him to opine as to whether the compensable injury "aggravate[d], accelerate[d] [sic], or contribute[d] to his preexisting changes in his right knee so as to play any causal role in his present need for a knee replacement." Dr. Sidani stated that the work-related injury was a "contributing cause" to the need for a total right-knee replacement.

At the hearing before the ALJ, Montelongo's testimony was consistent with what he originally had told Dr. Sidani; namely, that he was asymptomatic and did not require medical-treatment prior to the September 2016 injury. Tyson notes, however, that his medical records offered into evidence contradicted Montelongo's testimony, indicating that he had received an injection in his right knee in 2014 for right-knee pain.

After weighing the evidence, the ALJ rejected Dr. Sidani's opinion because it relied on inaccurate information that Montelongo was asymptomatic prior to his September 3,

8

2016 injury. However, the Commission, in reversing the ALJ, instead accepted Dr. Sidani's opinion as reliable, stating:

> The Commission acknowledges that [Montelongo] had a right knee injection in 2014 and did not relay this information to Dr. Sidani during his visit. However, we note that Dr. Sidani was aware that [Montelongo] had degenerative changes in his right knee when he offered his opinion. In Dr. Sidani's November 13, 2017 report he noted that he personally reviewed x-rays and the operative notes from the arthroscopic surgery performed by Dr. Allison. Also, Dr. Sidani assessed [Montelongo] as having right knee degenerative joint disease. Thus, we find that the one injection given more than three years prior to Dr. Sidani's opinion was not a material fact sufficient to use as a basis for disregarding Dr. Sidani's opinion.

Tyson asserts that the Commission's rationale for accepting Dr. Sidani's opinion is speculative, at best. Tyson argues that the Commission's opinion does not explain—nor can it—what Dr. Sidani would have opined had he not been told by Montelongo's attorney to assume that Montelongo was asymptomatic prior to the compensable injury. Tyson submits that this assumption was buttressed by the facts that Montelongo had told Dr. Sidani that "he did not have any knee pain prior to this injury on 09/02/2016" and that he had also filled out and signed a patient-intake form in which Montelongo had checked no to the question that asked whether he had any previous difficulty or injury to this area.

Although the Commission opined that Montelongo's right-knee injection two years before the compensable injury, and three years before Dr. Sidani's opinion, was not material to Dr. Sidani's opinion, Tyson urges that it is impossible to know what Dr. Sidani's opinion may have been had he been told about the injection and had he known of the other discrepancies between the medical records and Montelongo's testimony. Tyson submits that further confusing the matter, Montelongo's medical-history testimony and conflicting accounts in his medical records were not addressed by the Commission in its opinion.

We hold that the Commission did not err in its finding that the expert medical opinion of Dr. Sidani was not based on any mistake of material fact. Montelongo testified before the ALJ that he now remembered getting an injection for problems with his right knee from Dr. John Dunham on August 29, 2014. Montelongo further testified that he had simply forgotten this incident when he testified in his deposition and on the form that he filled out for Dr. Sidani, which indicated that he had not experienced any right-knee difficulties prior to his September 3, 2016 injury. He also testified that he experienced no further difficulties with his knee after the 2014 injection.

It is not unreasonable for Montelongo to have forgotten this single incident that occurred two years before his compensable injury, three years before seeing Dr. Sidani, and almost four years before his deposition. This is even more likely considering that Dr. Dunham's report shows that right-knee difficulties were not the reason for Montelongo's visit and that he noted records "no arthralgias/joint pain" and "normal movement of extremities."

Although Montelongo's records indicate a history of arthritis in his right knee as early as September 2014, the only medical treatment sought or recommended for this condition prior to September 3, 2016, was a single injection in 2014. But subsequent to, and as the result, of the September 3, 2016 compensable injury, Montelongo has required and undergone continuing medical treatment, including a medial meniscectomy, a lateral meniscectomy, and a patellofemoral and chondral chondroplasty.

As the Commission noted, Dr. Sidani was aware that Montelongo had preexisting degenerative changes in his right knee prior to the September 3, 2016 injury. In his January

18, 2018 report, Dr. Sidani acknowledged that Montelongo's compensable injury was less than 50 percent of the cause for his need for a right-knee replacement.

Considering this evidence, the Commission found that Dr. Sidani's expert medical opinion was entitled to sufficient weight to find that Montelongo had proved the necessary causal connection between his compensable right-knee injury and his need for a total right–knee replacement. The Commission's finding is likewise supported by substantial medical evidence. The recommendation of Dr. Sidani, a licensed orthopedic surgeon, and Montelongo's current treating physician for the compensable right-knee injury, is in accord with the prior findings of Dr. Charles Pearce, a qualified orthopedic surgeon at UAMS.

The Commission considered all the evidence and testimony presented and gave that evidence and testimony the weight and credibility it deemed it was entitled. We hold that the Commission also appropriately applied the applicable law in reaching its decision that the medical treatment recommended by Dr. Sidani for Montelongo's knee was reasonably necessary medical treatment for his compensable injury of September 3, 2016. Viewing the evidence in the light most favorable to the Commission's decision, we hold that the Commission's decision is supported by substantial evidence. Accordingly, we affirm.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *R. Scott Zuerker* and *Victor L. Crowell*, for appellant.

*Medlock and Gramlich, LLP*, by: *M. Jered Medlock*, for appellee.