Cite as 2020 Ark. App. 38

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-19-408

| | | |
|---|---|---|
| JAMY L. BLAIR | | OPINION DELIVERED: JANUARY 22, 2020 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G609036] |
| AMERICAN STITCHCO, INC., AND BRIDGEFIELD CASUALTY INSURANCE | | AFFIRMED |
| | APPELLEES | |

**ROBERT J. GLADWIN, Judge**

Jamy Blair appeals the April 4, 2019 decision of the Arkansas Workers' Compensation Commission (Commission) denying compensability of her claim as a result of its finding that Jamy did not rebut the presumption that her accidental injury was substantially occasioned by the use of an illegal drug. We affirm.

I. *Facts and Procedural History*

Jamy was hired by appellee American Stitchco, Inc. (Employer), and worked for it for five days—from Monday, December 5 through Friday, December 9, 2016. Although orientation was standard for new employees, Jamy was told that because a new group of employees would be starting within approximately a week, her orientation would be postponed and held with theirs. After spending her first day operating a sewing machine, Jamy was transferred to the cutting department early the second day. She remained in that department through the time of her injury.

In describing how she was shown to use the cutting machine without any formal training, Jamy's unrebutted testimony was that "there was one other girl there in that department. She showed me the material goes on this, this goes into this, it feeds through the machine, it comes out the other end, and that was it. And there was no more than that . . . and then when she said she put me on this machine, she showed me how to load it, and that was I watched her on her side, I did my side, and that was it."

By her fourth day of work in the cutting department, Jamy had used the machine that caused her injury a total of only three and a half to four hours. Additionally, the four buttons on the machines were not color coded or otherwise labeled, and there were no posted instructions.

On the day of the accident, Jamy had arrived early and was operating two cutting machines—one behind her and one in front of her. One machine was cutting mesh webbing strips, and the other was cutting "Velcro hook and loop" to specified lengths. She explained that one of the machines used a heated blade to burn the ends of cut material together so it would not fray. Her primary responsibility was to stand between the two machines, ensure they did not jam, and make sure that they were processing material correctly. Jamy explained that she felt pressured to maintain the production pace of a stack of material to be processed about which she had been told, "We have to get these done."

As Jamy attempted to straighten out the material on one machine that was overlapping on itself, the other machine came to an unexpected stop. Jamy examined that machine and noticed that it had stopped with a piece of Velcro hook and loop stuck between two of the cutting blades. She had never been shown exactly how the buttons on the

2

machine functioned, and they were not labeled. She hit the button she believed to be the off button and reached up under the guard in between the blades to pull the stuck material loose when the blade came down and severed her left index finger.

Jamy was taken by ambulance to the Baxter Regional Medical Center emergency department where x-rays showed a traumatic amputation of the distal end of the second phalanx including the distal interphalangeal joint ("DIP") and tuft of the left index finger. The finger was incised and drained, and Dr. Merwin Moore performed a shortening of the middle phalanx with flap closure on the date of the injury. Notably, Jamy was observed as alert, in no acute distress, and with intact, normal judgment. She provided a urine sample and was released.

Jamy testified that she spoke with a human-resources manager for Employer the day following this procedure and was told that Employer was sure a position with one hand would be available to her and that she could return to work. It was not until December 19, 2016, after nearly five days on the job and the accident that had severed part of her finger, that Jamy was able to attend the typical orientation. At the conclusion of the orientation, Jamy had a brief discussion with the human resources manager at which time she was told that a new guard had been put on the machine that injured her and that Employer was sure a position would be available for her. After she called on December 21 to report that she had been released to work and was ready to report back to one-handed duty, Jamy was told to consider herself terminated since no such work was available.

The postaccident report from Employer Solutions dated December 16, 2016, includes a "Positive/Abnormal" result indicating that Jamy tested positive for "Marijuana

3

Metabolites" with an initial test level of "50 ng/mL." Jamy admitted having used marijuana on a "sporadic" basis over some thirty years but stated that such use took place only on weekends—"[n]ever during the week, workweek, never during working hours." She testified that her last exposure to, or use of, marijuana had been at least four weeks prior to the accident and that she was "shocked" to learn of the presence of it in her urine.

Jamy contended that she sustained a compensable injury while performing employment services for Employer—while she was trying to remove a blockage in the cutting machine that she was operating so that she could continue her work—and that she was not under the influence of any drug when the injury occurred. Appellees controverted her claim, contending that her injury was not compensable because she tested positive for illegal drugs immediately following the accidental injury that was directly caused by her drug use.

The ALJ found Jamy to be a credible witness and did not find a direct, causal link between the ingestion of marijuana and her injury. He found in his November 16, 2018 opinion that Jamy had successfully rebutted the statutory presumption created by her positive drug screen and proved that she sustained an injury to her left index finger arising out of and in the course of her employment and was correspondingly entitled to the appropriate workers'–compensation benefits—medical, indemnity, and controverted attorney fee. However, the ALJ's findings of fact and conclusions of law were reversed by the Commission in its April 4, 2019 opinion. Jamy filed a timely notice of appeal on April 29, 2019.

II. *Standard of Review and Applicable Law*

This court recently reiterated the applicable law and standard of review in *Papageorge v. Tyson Shared Services, Inc.* 2019 Ark. App. 603, at 2–3, 590 S.W.3d 800, 802:

> The statutory presumption at issue in this case is encompassed in Arkansas Code Annotated section 11-9-102(4)(B)(iv) (Repl. 2012), which provides:
>
> (B) "Compensable injury" does not include:
>
> . . . .
>
> (iv)*(a)* Injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.
>
> *(b)* The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.
>
> *(c)* Every employee is deemed by his or her performance of services to have impliedly consented to reasonable and responsible testing by properly trained medical or law enforcement personnel for the presence of any of the aforementioned substances in the employee's body.
>
> *(d)* An employee shall not be entitled to compensation unless it is proved by a preponderance of the evidence that the alcohol, illegal drugs, or prescription drugs utilized in contravention of the physician's orders did not substantially occasion the injury or accident.
>
> When the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of proof requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. We view the evidence in the light most favorable to the Commission's decision, which will be affirmed if it is supported by substantial evidence. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. We defer to the Commission's findings of credibility and the resolution of conflicting evidence.

(Internal citations omitted). Whether a rebuttable presumption is overcome by the evidence is a question of fact for the Commission to determine. *See Reed v. Turner Indus.*, 2015 Ark. App. 43, at 7, 454 S.W.3d 237, 241.

### III. *Discussion*

Although it is undisputed that Jamy tested positive for marijuana metabolites while at the hospital immediately after the accidental injury to her finger thus triggering the statutory presumption that her injury was substantially occasioned by her use of the illegal drug, she claims that under the particular circumstances of this case, and as correctly recognized by the ALJ, the preponderance of the evidence made clear that any direct, causal link between the presence of marijuana metabolites in her body and the accident in this case is totally absent and based wholly on speculation and conjecture. Jamy submits that she rebutted the presumption that the accident was substantially occasioned by her marijuana use and proved that it was instead occasioned by simple human error caused by her attempt to accomplish work tasks for which she had not received adequate training in a timely manner with unfamiliar machines.

Jamy cites *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998), and subsequently *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858, and *Edmisten v. Bull Shoals Landing*, 2014 Ark. 89, 432 S.W.3d 25, in which our supreme court has established that the mere presence of illegal drugs in the system of a claimant is not an automatic bar to receiving workers'−compensation benefits; instead, the words "substantially occasioned" means there must be a direct, causal link between the use of illegal drugs and the injury or accident. Jamy notes that there was no testimony establishing that

6

she acted or appeared intoxicated. The related medical records indicate that she was "alert, no acute distress" and "cooperative," that she had an "appropriate mood and effect, normal judgment," and that she was a "very pleasant female who is awake, alert, and oriented." She submits that while a trained physician would recognize and comment if a claimant's cognition suggested impairment or inebriation, here, the attending physicians noted the opposite.

In her attempt to rebut the presumption that her injury was substantially occasioned by her use of marijuana, Jamy explained that no supervisor was around to help when the machine stopped, and no tools were available to free the tangled piece of Velcro hook and loop from the machine. Jamy testified that she had neither attended an orientation nor been shown how these machines worked and what actions the various buttons performed. She maintains that it merely appeared to her that she needed only to pull a piece of material loose that day—at a time that she was under pressure to complete a stack of orders. She submits that there was no established procedure in place that she had been made aware for handling a machine that had jammed, backed up, or otherwise stopped unexpectedly. Moreover, Jamy notes that further undermining any assertion of marijuana intoxication is her unrebutted testimony that she was offered her job back by the human-resources manager on the evening of her injury after surgery and again in her office after the orientation of December 19, 2016.

Moreover, Jamy asks the court to take judicial notice of the fact that Employer could have called witnesses to testify that Jamy appeared intoxicated in some way—ignoring instructions or otherwise acting recklessly—but no such witnesses were called. Jamy submits

that the decision of the Commission reversing the ALJ's findings of credibility and compensability is not supported by substantial evidence and must be reversed.

We disagree and reiterate that we defer to the Commission's findings of credibility and the resolution of conflicting evidence. *Papageorge, supra.* The Commission ruled on Jamy's credibility, finding that she was not a credible witness. The Commission is not required to believe Jamy's testimony or any other witness but may accept and translate into findings of fact only the portions of testimony that the Commission deems worthy of belief. *See Thompson v. Mountain Home Good Samaritan Vill.*, 2014 Ark. App. 493, 442 S.W.3d 873.

It is undisputed that Jamy tested positive for and admitted using marijuana in a recreational and sporadic manner. Marijuana metabolites in a person's urine are sufficient to invoke a rebuttable presumption that the injury or accident was substantially occasioned by the use of the illegal drug. *Graham v. Turnage Emp't Grp.*, 60 Ark. App. 150, 960 S.W.2d 453 (1998); *Brown v. Ala. Elec. Co.*, 60 Ark. App. 138, 959 S.W.2d 753 (1998); Ark. Code Ann. § 11-9-102(4)(B)(iv)*(b)* (Repl. 2012). Once the evidence was admitted indicating that illegal drugs were in Jamy's system at the time of the accident, the burden of proof shifted to Jamy, requiring her to prove by a preponderance of the evidence that the accident was not substantially occasioned by illegal drugs. *Prock, supra.*

First, the Commission found that the evidence before it did not corroborate Jamy's testimony that she had not smoked marijuana for "at least a month or more" prior to commencing her employment with Employer. A claimant's testimony is never considered to be uncontroverted, *see St. Jean Indus., Inc. v. Ezell*, 2016 Ark. App. 516, 504 S.W.3d 679, and the uncontested postaccident urine screen plainly shows that the illegal drug marijuana

8

was in Jamy's system at the time of the December 9, 2016 accidental injury. The record before us contains no scientific or medical expert testimony offered by Jamy to explain if or how the level of marijuana metabolites in her system might have affected her judgment and actions with respect to the accidental injury.

For an injury to be substantially occasioned by the use of illegal drugs as set forth in section 11-9-102(5)(B)(iv)*(b)*, the acts leading to the injury must require judgment, and that judgment must be poor or impaired. *See Ester v. Nat'l Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998). Evidence of the necessity of the use of judgment and Jamy's subsequent poor use of judgment are indicated during her testimony on cross-examination:

> So, at that point here were some options that were discussed in my deposition. One was going to get a supervisor. I did not do that. Second would be to put a tool up there to pull the fabric out. I did not do that. Third option would be to put my fingers in there and grab whatever was causing the malfunction, and that's what I did. I did not have to bend over to do that. I went like this (demonstrating) and the blade came down cutting my finger off. There is a guard that covers the chute that the material drops down off of into the catch basket. I had to reach up under the guard to stick my finger in where the blade was. Looking back that was probably not the best use of judgment.

Jamy offered no corroborating evidence to support her testimony that she was not properly trained with regard to use of the machines at work. The Commission relied on the evidence before it that clearly and undisputedly indicated that Jamy deliberately placed her hand under a blade described by her as similar to a guillotine. Jamy further acknowledged on cross-examination that she "did not need to be warned" that willingly placing her hand under such a blade was a dangerous activity and admitted that she even reached under a guard to place her finger near the blade on the machine.

9

We hold that substantial evidence supports the Commission's finding that the assertions on which Jamy relies do not rebut the presumption. Although Jamy argues that there was no evidence that in the five days she worked for Employer she had any problems at work or appeared impaired, this assertion ignores the fact that it was Jamy's responsibility to prove the above reasoning. It was Jamy's burden to produce evidence or call witnesses to prove that her injury was not substantially occasioned by her drug use, and she failed to do so.

Despite Jamy's contentions that she was not given proper training or orientation and that the machine had no instructions or color-coded buttons, the amount of training that may have been provided does not prevent her from using her judgment. Jamy offered no evidence except her self-serving testimony as to how and whether she was trained, and the action taken by Jamy of reaching under the blade was an example of poor judgment regardless of training or instructions. Not knowing how to fix a jam and use the buttons on a machine is no excuse for reaching into an obviously dangerous cutting machine.

Jamy's only evidence outside of her own self-serving testimony is the report from the emergency room. The physical-examination section of the report stated that Jamy was a "pleasant female who is awake, alert and oriented" and later, "cooperative with appropriate mood, effect, and normal judgment." No evidence was presented that this single section of the emergency-room report is meant to assess Jamy's level of intoxication. Reliance on that statement also fails to take into account the amount of time that had passed between the injury and the emergency-room visit and further fails to account for the amount of adrenaline that was most likely present after Jamy's finger was severed. We hold that this

minor, routine notation relied on by Jamy is not, in and of itself, sufficient to rebut the presumption as a matter of law.

We hold that the Commission based its decision that Jamy failed to rebut the presumption that her injury was substantially occasioned by the use of illegal drugs on substantial evidence, and it is within the Commission's sole authority to accept or reject medical evidence. Further, the Commission specifically found that Jamy was not credible, and questions regarding the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *M.A. Mortenson Cop. v. Reed*, 2019 Ark. App. 569, 589 S.W.3d 487.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Frederick S. "Rick" Spencer*, for appellant.

*Zachary Ryburn*, for appellees.

11